STATE of Wisconsin, Plaintiff-Respondent,

v.

Jordan A. DENK, Defendant-Appellant.

Supreme Court

*No. 2006AP1744–CR. Oral argument October 7, 2008.
—Decided December 30, 2008.*

(On certification from the court of appeals.)

2008 WI 130

(Also reported in 758 N.W.2d 775.)

For the defendant-appellant there were briefs filed and oral argument by *Lora B. Cerone,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Michael J. Losse,* assistant attorney general, with whom on the brief was *J.B. Van Hollen.*

¶ 1. ANN WALSH BRADLEY, J. This case is before the court on certification from the court of appeals

pursuant to Wis. Stat. § (Rule) 809.61 (2005–06).[1] The court of appeals certified the following question: whether the police may search the personal belongings of a passenger that are found outside a motor vehicle incident to the arrest of the driver based on the reasoning in *State v. Pallone,* 2000 WI 77, 236 Wis. 2d 162, 613 N.W.2d 568.

¶ 2. The defendant, Jordan A. Denk, asserts that the circuit court erred in denying his motion to suppress evidence uncovered during a warrantless search. He maintains that the State failed to establish that the search fit into the search incident to arrest exception or any other established exception to the warrant requirement. In addition, Denk argues that in the interest of justice he should be allowed to withdraw his plea. He advances that because his plea was unknowing and involuntary, the circuit court erred by denying his postconviction motion to withdraw his no contest plea for possession of methamphetamine.

¶ 3. We determine that the warrantless search here was incident to the arrest and was supported by both of the historical rationales at the heart of that exception, namely the safety of the arresting officer and the need to discover and preserve evidence. Thus, we conclude that based on the reasoning in *State v. Pallone,* under the circumstances of this case, the search of the eyeglass case was a permissible search incident to the arrest of the driver of the vehicle.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

The defendant appeals an order of the Circuit Court for Pepin County, Dane F. Morey, Judge, denying his motion to suppress. He also appeals an order of the Circuit Court for Pepin County, James J. Duvall, Judge, denying his postconviction motion.

¶ 4. In addition, we determine that because Denk got the benefit of his plea bargain, he has failed to show by clear and convincing evidence that a manifest injustice would occur if he was not allowed to withdraw his plea. Accordingly, we affirm the orders of the circuit court.

## I.

¶ 5. This case centers around the arrest of Jordan A. Denk for possession of narcotics and paraphernalia. After the circuit court denied Denk's motion to suppress evidence seized in the search, Denk pleaded no contest to felony possession of methamphetamine.

¶ 6. On November 14, 2004, Denk was a passenger in a car driven by Christopher Pickering. At approximately 11:01 p.m., the car was parked on the shoulder of a county road with the two occupants inside.

¶ 7. While alone on routine patrol, Officer Jeff Hahn of the Pepin police force noticed the parked vehicle. He approached the car to ask whether the occupants needed assistance. Pickering partially rolled down his window and stated that he had stopped to make a call on his cell phone. Officer Hahn returned to his squad car.

¶ 8. At that point, Officer Hahn noticed that the tag on the license plate was expired. He ran a check and realized that the plates were registered to a different vehicle. Officer Hahn approached the car for the second time.

¶ 9. After Pickering rolled the window down, Officer Hahn detected the strong odor of burning marijuana. When asked about the odor, Pickering stated that he did not smoke marijuana. Denk stated that he

had not smoked marijuana since he was released from a treatment facility earlier in the year.

¶ 10. Officer Hahn asked Pickering if he could search the vehicle. Pickering consented, and Officer Hahn asked both men to step out of the vehicle. He directed Pickering to stand by the rear of the vehicle, and Denk stood directly next to the closed passenger-side door.

¶ 11. Officer Hahn noticed that the pockets of Pickering's hooded sweatshirt were "bulging and heavy with some objects." He later testified that he was concerned about weapons because he "was about to look inside the vehicle and turn [his] back on both parties. And [he] was suspicious as to what [Pickering] may have in there that could harm [him]." Pickering stated that he had a Swiss army knife in his front pocket. Officer Hahn asked Pickering if he could pat him down for safety, and Pickering became very quiet. He stated, "I do have a problem with that." He told Officer Hahn, "I don't like to be touched."

¶ 12. When Pickering was asked to empty out his own pockets, he partially complied, but Officer Hahn felt that Pickering was picking and choosing what to produce. As Officer Hahn was illuminating the pocket with his flashlight, he saw a glass pipe that he "believed to be drug paraphernalia in the pocket[.]" Officer Hahn again asked Pickering if he possessed any narcotics. He testified that Pickering "became rigid. He clenched his hands and, basically, took a posture that I thought he was either going to run or fight." Finally, Pickering admitted that he had some "weed."

¶ 13. Officer Hahn placed Pickering in handcuffs, told him that he was detained, and removed the remaining items from the sweatshirt pockets. He found a baggie containing three individually-wrapped quanti-

11

ties of marijuana, a glass pipe, a small metal cylinder containing marijuana, and a small scale.

¶ 14. Officer Hahn then walked to the passenger side of the car where Denk stood. In response to Officer Hahn's question, Denk said that he did not possess any narcotics. Officer Hahn noticed a hard black case lying on the ground just underneath the passenger door. Denk stated that it was his eyeglass case. Officer Hahn asked Denk to retrieve the case,[2] and Denk put it on top of the car.

¶ 15. Upon opening the case, Officer Hahn found a glass methamphetamine pipe and some cleaning tools. He placed Denk in handcuffs and searched his person, finding a baggie containing marijuana and a baggie containing a white, powdery residue which Denk later identified as methamphetamine.[3]

¶ 16. Officer Hahn placed both Pickering and Denk in the back of his squad car and informed them that they were under arrest. He proceeded to conduct a more thorough search of Denk's coat and found a silver pipe and a glass pipe, which he believed were used for smoking narcotics.

¶ 17. Two days later, a criminal complaint was filed which charged Denk with four counts: (1) Class I felony possession of methamphetamine; (2) Class I felony possession of THC with intent to deliver; (3) misdemeanor possession of marijuana; and (4) misde-

[2] This fact is taken from the defendant's statement of the facts. It is not clear from the record whether Officer Hahn asked Denk to place the case on the car, or whether Denk did so of his own initiative.

[3] It is not clear from the record whether the baggie containing methamphetamine was found in the eyeglass case or on Denk's person.

meanor possession of drug paraphernalia. Officer Hahn's police report from the incident was attached to the complaint.

¶ 18. Officer Hahn was the only witness at the preliminary hearing held on January 25, 2005. He testified to the facts that were contained in his police report. The circuit court found that "it's probable that one or more felonies have been committed and [Denk] probably committed it."

¶ 19. On January 27, the district attorney filed the information, which modified the felony charges. This time, Denk was charged with Class I felony possession of methamphetamine and an added charge, Class H felony possession of drug paraphernalia. The added charge stated that Denk "did knowingly possess with primary intent to use, Methamphetamine pipe to convert Methamphetamine, contrary to sec. 961.575(3) Wis. Stats."

¶ 20. Denk filed a motion to suppress the evidence seized during the search. At the motion hearing, Officer Hahn again was the only witness and he largely reiterated his testimony from the preliminary hearing. The court denied the motion and determined that: (1) Officer Hahn did not stop the vehicle because it was already stopped; (2) the car had the wrong license plate, giving Officer Hahn the authority to arrest the driver for violation of traffic laws; (3) Officer Hahn had the authority to search incident to arrest; (4) there was consent to search the vehicle; and (5) there was consent to search Denk's person.[4]

---

[4] It is unclear what the circuit court meant by this. While Pickering could consent to a search of the vehicle, he could not consent to a search of his passenger. *See State v. Matejka,* 2001 WI 5, 241 Wis. 2d 52, 621 N.W.2d 891 (driver's consent to search

¶ 21. Denk accepted the district attorney's offer of a plea agreement. The offer required Denk to plead guilty or no contest to felony possession of methamphetamine. In exchange, the State dismissed the felony methamphetamine paraphernalia charge and the misdemeanor charges for possession of marijuana and marijuana-related paraphernalia. The State recommended that he serve six months in the county jail as a condition of probation.

¶ 22. After determining, among other things, that Denk's plea was knowing and voluntary and that Denk was satisfied by his attorney's services, the court accepted Denk's no contest plea. The court later withheld sentence and placed Denk on probation with five months in county jail as a condition of probation.

¶ 23. On April 27, 2005, Denk filed a postconviction motion to withdraw his plea. He stated that there was no factual basis for charging him with one felony count of possession of methamphetamine paraphernalia under Wis. Stat. § 961.573(3). He argued that he could not have been convicted of the charge, and thus, the district attorney's offer to drop the charge provided an illusory benefit. As a result, he contended, the bargain was incapable of fulfillment and his plea was unknowing and involuntary.

¶ 24. At the motion hearing, Denk's appellate counsel advanced that his methamphetamine pipe was intended for personal use. She argued that Wis. Stat. § 961.573(3) applied to paraphernalia related to the manufacture of methamphetamine, and that the legislature did not intend for possession of a pipe for

of a car extended to passenger items in the car, but not to passengers). Further, the record does not support a finding that Denk consented to the search. Merely placing a container in view of an officer does not constitute consent to search it.

personal use to be a felony. She asserted that Denk's pipe did not "convert" methamphetamine, as he was charged under the statute, and that the court should decide that there was no factual basis for the charge as a matter of law.

¶ 25. Denk's attorney did not present any testimony or ask for an evidentiary hearing regarding the use of the pipe in question. In fact, she did not present any evidence at all, aside from a letter from Denk's trial attorney outlining the terms of the plea agreement. Further, she specifically stated that Denk was not contending that his trial counsel was ineffective for failing to ask the court to dismiss the purportedly unfounded charge.

¶ 26. The court denied Denk's motion, concluding that the State had fulfilled its promise to dismiss the felony. The court noted that while it is likely that the State would not prevail on the paraphernalia charge, the State "had the right to try it and to argue a different purpose for the pipe other than simply ingesting" methamphetamine. Further, the court stated:

> And that's assuming, for the sake of the argument, that a pipe for ingesting does not meet conversion. For example, if the pipe was used to convert the methamphetamine from one form into another form so that it could be used. I mean that could have been the State's theory.

The court concluded, "Whether the State could have proven that [the pipe was used to convert methamphetamine] at trial is something I can't decide. I can't find that they cannot have done so."

¶ 27. Based on the lack of evidence, the court stated, "Well, see, we're all speculating. And that's the problem." Further, the court concluded, "[U]ntil we had

15

some sort of an evidentiary hearing on that, I don't think I can make that finding. Because what you're asking me to do is make a ruling, that, under these facts, that could not constitute convert[ion.]" The court denied the postconviction motion.

¶ 28. Denk appealed both the denial of the suppression motion and the determination of his postconviction motion. The court of appeals certified the question to this court under Wis. Stat. § 809.61, and we accepted the certification.

II.

■

¶ 29. When we accept certification from the court of appeals, we acquire jurisdiction of the entire appeal. We thus consider all issues raised before the court of appeals. See Wis. Stat. §§ 808.05(2) and (Rule) 809.61; *State v. Stoehr,* 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986). This case presents two separate questions of constitutional fact, which we address in turn.

■■

¶ 30. The legality of a warrantless search is a question of constitutional fact. *State v. Sanders,* 2008 WI 85, ¶ 25, 311 Wis. 2d 257, 752 N.W.2d 713. When reviewing an order that denied a motion to suppress evidence uncovered during a warrantless search, this court will uphold the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous. *Id.* However, we apply the principles of constitutional law to those facts independent of, but benefitting from, the analysis of the circuit court. *Id.*

■■

¶ 31. Whether a plea was knowingly and voluntarily entered is also a question of constitutional fact. *State v. Dawson,* 2004 WI App 173, ¶ 7, 276 Wis. 2d

16

418, 688 N.W.2d 12. A defendant is entitled to withdraw a no contest plea after being sentenced upon a showing of manifest injustice by clear and convincing evidence. *State v. Bentley,* 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).

## III.

¶ 32. The court of appeals certified the following question: Whether the police may search the personal belongings of a passenger that are found outside a motor vehicle incident to the arrest of the driver based on the reasoning of *State v. Pallone,* 2000 WI 77, 236 Wis. 2d 162, 613 N.W.2d 568.[5]

¶ 33. We note at the outset that Officer Hahn testified he did not place Pickering under arrest until after he had performed searches of the eyeglass case and Denk's clothing. This fact does not alter our analysis. In *State v. Sykes,* 2005 WI 48, ¶ 15, 279 Wis. 2d 742, 695 N.W.2d 277, we agreed with the United States Supreme Court that "where a 'formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly

---

[5] The court of appeals' certification also included the following:

> [W]hat inquiry should be made when a passenger's personal belongings are found outside a motor vehicle? Must the circuit court make a factual finding as to how the passenger's property ended up outside the vehicle? May the police officer draw an inference that Denk tossed the case from the car or that it fell out of the car, and was thus subject to search? Should the police officer draw an inference that the case fell out of Denk's pocket, and thus was not subject to search? Because the State carries the burden, does the State's failure to show how the eyeglass case got out of the car require an inference that it was on Denk's person and then fell to the ground, thus resulting in suppression of the evidence?

These questions are tangential to our inquiry, as discussed below in paragraphs 50–52.

17

important that the search preceded the arrest rather than vice versa.' " (*Quoting Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). We concluded that a warrantless search "may be incident to a subsequent arrest if the officers have probable cause to arrest before the search." *Id.* (internal quotations omitted).

¶ 34. Here, there is no doubt that Officer Hahn had probable cause to arrest Pickering for possession of narcotics and paraphernalia prior to any searches of Denk's possessions. With this in mind, we proceed to a discussion of the search incident to arrest exception to the warrant requirement and the application here of *State v. Pallone.*

¶ 35. The Wisconsin Constitution[6] and the United States Constitution[7] both guarantee the right of persons to be secure from unreasonable searches and seizures. This court has generally interpreted the protections against unreasonable search and seizure afforded by the state constitution coextensively with the protections afforded by the federal constitution.[8] *State*

---

[6] Article I, Section 11 of the Wisconsin Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

[7] The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[8] We have stated, however, that our state constitution may provide greater protections than the federal constitution. *State*

*v. Post,* 2007 WI 60, ¶ 10 n.2, 301 Wis. 2d 1, 733 N.W.2d 634; *State v. Secrist,* 224 Wis. 2d 201, 208–09, 589 N.W.2d 387 (1999).

■■

¶ 36. Warrantless searches are presumed to be unconstitutional. *Sanders,* 311 Wis. 2d 257, ¶ 27. Our jurisprudence has established several exceptions to this constitutional rule, based on a balance between the intrusion on the individual's Fourth Amendment interests and the government's promotion of its legitimate interests. *State v. Murdock,* 155 Wis. 2d 217, 227, 455 N.W.2d 618 (1990). The State bears the burden to prove that a warrantless search falls under one of the established exceptions. *Sanders,* 311 Wis. 2d 257, ¶ 27; *Pallone,* 236 Wis. 2d 162, ¶ 29.

¶ 37. Here, we are presented with yet another factual scenario involving a warrantless search. The State advances several exceptions and argues that the search of Denk's eyeglass case fits under each one. Because we decide this case on search incident to arrest, we need not address the State's remaining proffered exceptions. We focus our inquiry on the certified question—whether under the circumstances here this was a valid search incident to Pickering's arrest.

¶ 38. We discuss first the historical underpinnings of the search incident to arrest exception to determine whether this particular factual situation gives rise to a proper search incident to Pickering's arrest. We then determine whether the reasoning in *State v. Pallone,* 236 Wis. 2d 162, applies to the facts of this case.

---

*v. Post,* 2007 WI 60, ¶ 10 n.2, 301 Wis. 2d 1, 733 N.W.2d 634; *State v. Eason,* 2001 WI 98, ¶ 63, n.30, n.31, 245 Wis. 2d 206, 629 N.W.2d 625.

¶ 39. During Prohibition, court decisions began to give police officers broad authority to conduct warrantless searches incident to lawful arrests. *See* 3 Wayne R. LaFave, *Search and Seizure; A Treatise on the Fourth Amendment* § 7.1(a) (4th ed. 2004); *see also Chimel v. California*, 395 U.S. 752, 755–60 (1969) (recounting the history of the search incident to arrest exception). Often, police were permitted to search all areas considered to be in the possession or under the control of the arrestee. LaFave, *supra*, § 7.1(a). These warrantless searches could encompass entire homes and offices, including attics, desks, safes, file cabinets, and other personal effects. *Id.*; *see also United States v. Rabinowitz*, 339 U.S. 56, 61 (1950) (granting police the right "to search the place where the arrest is made in order to find and seize things connected with the crime"), *overruled by Chimel*, 395 U.S. 752.

¶ 40. This seemingly limitless authority was reigned in by the seminal case, *Chimel v. California*, 395 U.S. 752. Under *Chimel*, arresting officers are permitted to conduct a contemporaneous, limited search of both the arrestee's person and the area immediately surrounding the arrestee at the time of the arrest. *Id.* at 762–63. That is, under *Chimel*, officers are permitted to search any area close enough that the arrestee might reach a weapon or evidentiary item. *Id.* at 763.

¶ 41. The Supreme Court clarified that there were only two permissible justifications for warrantless searches incident to arrest. First, *Chimel* permitted an officer to search for and remove any weapons in order to protect the officer's safety and to effectuate the arrest. *Id.* at 762–63. Second, *Chimel* permitted an officer to search for and seize evidence in order to prevent its concealment or destruction. *Id.* at 763. This court has

20

adopted *Chimel*'s dual justifications for search incident to arrest. *State v. Mordeszewski,* 68 Wis. 2d 649, 658, 229 N.W.2d 642 (1975).

¶ 42. Since *Chimel,* however, courts have struggled to delineate the proper bounds of searches incident to arrest. Myron Moskovitz, *A Rule in Search of a Reason,* 2002 Wis. L. Rev. 657, 681–96. State and federal cases have chipped away at its original rationale. *See, e.g., New York v. Belton,* 453 U.S. 454 (1981); *State v. Murdock,* 155 Wis. 2d 217, 455 N.W.2d 618 (1990); *State v. Fry,* 131 Wis. 2d 153, 388 N.W.2d 565 (1986). These and similar cases prompted Justice Scalia to note that our jurisprudence seems to assume a "mythical arrestee possessed of the skill of Houdini and the strength of Hercules." *Thornton v. United States,* 541 U.S. 615, 625–26 (Scalia, J. dissenting) (internal quotations omitted).

¶ 43. Even though searches incident to arrest have been expanded beyond the restrictive contours of *Chimel,* our case law affirms that there is a limit. Our most recent pronouncement regarding searches incident to arrest was in *Sanders,* 311 Wis. 2d 257. In that case, we reaffirmed that when the justifications to search outlined in *Chimel* are no longer present, a warrantless search is unconstitutional. We will not permit searches incident to arrest after the defendant has been handcuffed, placed in a squad car, and removed from the scene. *Id.,* ¶ 52.

¶ 44. In *Sanders,* the defendant was arrested in his home. *Id.,* ¶¶ 13–14. After the defendant had been escorted from the premises, an officer conducted a search of his bedroom. *Id.,* ¶ 15. During this search, the officer opened a container located under the defendant's bed and found contraband. *Id.,* ¶ 16. We concluded that "[t]he purposes of the search incident to arrest [protect-

21

ing the safety of the officers and preventing the destruction or concealment of evidence] were achieved by removing the defendant from his home." *Id.*, ¶ 56. There was simply no justification for opening the container without first securing a warrant.

¶ 45. Clearly, courts have struggled to determine the degree to which they can and should inquire about the reasonableness of the State's assertion that a search is justified based on officer safety and the preservation of evidence.[9] While it is true that the State has occasionally imparted Houdini-like qualities on arrestees in order to fit questionable searches within the search incident to arrest exception, this is not such a case. Here, the situation could reasonably have presented an actual danger—both to Officer Hahn and to the integrity of any yet-to-be-discovered evidence. Under these facts, the situation implicates both of *Chimel*'s original justifications for permitting a search incident to arrest.

¶ 46. The United States Supreme Court has noted that "[t]he danger to the police officer [making a custodial arrest] flows from the fact of the arrest, and its attendant proximity, stress and uncertainty[.]" *United States v. Robinson,* 414 U.S. 218, 234 n.5 (1973). Moreover, "[s]ince fruits, instruments or other evidence of crime concealed on the person of the arrestee may be easily disposed of or destroyed, the arresting officer will often be justified in searching for such evidence without delay." *United States v. Robinson,* 447 F.2d 1215, 1227 (D.C. Cir. 1971).

---

[9] The United States Supreme Court is currently considering whether the State must prove that there was an actual threat to officer safety in order to justify a warrantless search incident to arrest. *See State v. Gant,* 162 P. 3d 640 (Ariz. 2007), *cert. accepted,* ___ U.S. ___, 128 S. Ct. 1443 (2008).

22

¶ 47. In *State v. Pallone,* we determined that under some situations, an officer may conduct a warrantless search of passenger belongings even when the officer does not have probable cause to arrest the passenger. 236 Wis. 2d 162, ¶ 3. We stated:

> An occupant, no less than an arrestee, can pose a danger to officer safety, and a passenger, no less than an arrestee, can seize weapons or objects to assault an officer or effect an escape.

*Id.,* ¶ 47 (internal citations omitted).

¶ 48. In that case, Pallone was a passenger in a truck. After the driver of the truck had been placed under arrest for possessing an open intoxicant, the officer approached the truck again. *Id.,* ¶ 9. At that point, the officer testified, Pallone began to exhibit nervous and menacing behavior. Pallone followed the officer by walking parallel to him on the opposite side of the truck. *Id.* Appearing nervous, Pallone put his hands on the duffel bag resting on the seat, and he commented that he wished to remove it from the truck. *Id.,* ¶ 10. The officer later testified that Pallone's behavior made him suspect that the duffel bag contained something he "wasn't supposed to know about [] or see." *Id.*

¶ 49. Under those circumstances, we determined that "the danger to [the arresting officer] flowed from the proximity and uncertainty Pallone posed once [the driver] was under arrest." *Id.,* ¶ 48. Furthermore, it was not unlikely that evidence of the driver's crime could be concealed in Pallone's bag. *Id.,* ¶ 56. We upheld the search as a proper search incident to the driver's arrest, stating:

> Although Pallone himself was not under arrest, the search incident to arrest exception applies in this case, unlike in [other factually distinguishable cases], be-

23

cause the circumstances here gave rise to both of the two historical rationales at the heart of the exception, namely the safety of the arresting officer and the need to discover and preserve evidence.

*Id.*, ¶ 53. We declined to "provide vehicle occupants with the incentive to sabotage an otherwise legal search by concealing weapons or evidence in areas that remain within an occupant's easy reach." *Id.*, ¶ 56.

¶ 50. Denk urges the court to refrain from applying the rationale of *Pallone* to permit unwarranted searches of the personal belongings of an unarrested passenger that are not located within the passenger compartment. He concedes that, had the case been loose in the passenger compartment of the car, *Pallone* would have authorized its search. *See id,* ¶ 55. Further, he correctly notes that if the eyeglass case had been on his person instead of on the ground, it could not have been searched. *See United States v. De Ri*, 332 U.S. 581, 586–87 (1948). He argues that the constitutionality of the search cannot be determined unless the original location of the eyeglass case is known.

¶ 51. In this case, it is not known how the eyeglass case came to be on the ground, just underneath the passenger door. Plausibly, the case could have fallen from Denk's pocket when he exited the vehicle. An equally plausible theory is that it fell out of the passenger compartment of the car. A third possibility is that Denk could have intentionally placed the case on the ground. Denk asserts that because it is the State's burden to prove that a warrantless search fits within an exception to the warrant requirement, the State must prove the original location of the eyeglass case. Only then, he contends, can it be determined whether the search of the case was permissible as a search incident to Pickering's arrest.

¶ 52. Determining the constitutionality of a warrantless search is a fact-intensive inquiry, and resolution of these questions has always turned on the specific facts of the case. *See State v. Elam*, 68 Wis. 2d 614, 621, 229 N.W.2d 664 (1975). The origin of the eyeglass case is not material to our analysis. Knowing the origin would not assist us in determining whether "the circumstances here gave rise to both of the two historical rationales at the heart of [*Chimel*], namely the safety of the arresting officer and the need to discover and preserve evidence." *See Pallone*, 236 Wis. 2d 162, ¶ 53. Instead, the relevant fact is the location of the case at the time when Officer Hahn first encountered it. We must determine whether, under these facts and given that the case was on the ground just underneath the passenger door, Officer Hahn was permitted to search it incident to Pickering's arrest.

¶ 53. Here, Officer Hahn was a lone officer involved in a late night custodial arrest involving two men. When he approached the car, he was able to smell the strong odor of burning marijuana. From that, he could reasonably infer that at least one of the men had recently been ingesting narcotics, which could impair his judgment about appropriate conduct. Further, despite the lingering odor, both men denied possessing any narcotics. This could lead a reasonable officer to believe that at least one of the men was attempting to conceal illegal activity.

¶ 54. In addition to the odor of burning marijuana, Officer Hahn determined that Pickering possessed a knife, several bags of marijuana, and paraphernalia tending to show an intent to distribute marijuana. Moreover, Pickering became rigid and clenched his fists when asked if he would consent to a pat-down search.

25

Based on this, Officer Hahn thought that he was likely to attempt to flee or resist arrest.

¶ 55. The fact of a custodial arrest often raises the possibility of harm to officers or evidence. *Robinson,* 414 U.S. at 234 ("The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress and uncertainty[.]") Pickering's behavior was sufficiently menacing and erratic to raise concern for officer safety and preservation of evidence. Officer Hahn placed Pickering in handcuffs, but he did not yet secure Pickering in the back of his squad car. Instead, it appears that Pickering remained standing at the back of his vehicle.

¶ 56. The record indicates that Officer Hahn was concerned about the possible threat posed by Denk as well. In a situation where two men were alone in a car permeated with the smell of burning marijuana, it is reasonable for an officer to be concerned that Denk could attempt to assist Pickering, either by endangering the officer or by concealing evidence of his friend's crime.[10]

¶ 57. Officer Hahn's suspicions were further aroused when he arrived at the passenger side of the car. There, he noticed a hard, opaque container large enough to conceal a small weapon or further evidence related to the possession or distribution of narcotics. The eyeglass case was positioned on the ground, just underneath the car and accessible from the passenger

---

[10] While Denk stated that the eyeglass case was his, Officer Hahn was not obligated to believe that it did not contain evidence relating to Pickering's subsequent arrest. *See Pallone,* 2000 WI 77, ¶ 56, 236 Wis. 2d 162, 613 N.W.2d 568 (declining to provide vehicle occupants with an incentive to sabotage an otherwise legal search by concealing evidence in passenger belongings).

26

seat. The very presence of the container on the ground, in that spot, was suspicious.

¶ 58. In *Pallone,* we stated that under some circumstances, passenger belongings can be subject to search incident to the arrest of the driver, and that the unarrested occupant may pose as much danger as the arrested driver. *Pallone,* 236 Wis. 2d 162, ¶¶ 55–56. In that case, the suspicious container belonging to the unarrested occupant was in the passenger compartment of the car. The search of Pallone's duffel bag was authorized because the officer had reason to believe that Pallone could pose a danger, and the bag was within his reach.

¶ 59. Here, a fact-intensive inquiry reveals that it is reasonable for an officer to believe that Denk posed a danger to Officer Hahn's safety, either alone or in concert with Pickering. The eyeglass case was easily within Denk's reach. It was next to his feet. The case was capable of containing a small weapon, such as a knife or a razor blade. Denk was not restrained in any way, so it would have been easy for him to reach down and grab the case, availing himself of a weapon hidden inside. Further, Denk could have kicked the case under the car to Pickering, who was standing in close proximity directly behind the car. As in *Pallone,* the danger to the arresting officer flowed from the proximity and uncertainty Denk posed once Pickering was under arrest.

¶ 60. A fact-intensive inquiry also raises concerns about the preservation of evidence. Based on the odor of burning marijuana, the individually-wrapped bags of marijuana, and the scale, Officer Hahn knew that both narcotics and paraphernalia had been present in the vehicle. Narcotics or paraphernalia could be concealed in an opaque case such as this. Given the suspicious loca-

27

tion of the case just beneath the car door, it is reasonable to believe that Denk was attempting to discard evidence.

¶ 61. We determine that the warrantless search here was incident to the arrest and was supported by both of the historical rationales at the heart of that exception, namely the safety of the arresting officer and the need to discover and preserve evidence. In this situation, Office Hahn was outnumbered at a late night arrest involving two men and knew that narcotics were present. The proximity of the eyeglass case to the car, to Denk, and to Pickering, as well as its unexplained location at Denk's feet, raised questions about the danger Denk posed acting alone or in concert with Pickering. Thus, we conclude that based on the reasoning in *State v. Pallone,* the search of the eyeglass case was a permissible search incident to the arrest of the driver of the vehicle.

¶ 62. Lest our discussion be misconstrued, we reiterate the bright-line rule that unarrested passengers cannot themselves be searched based solely on the arrest of the driver.[11] In order to search the body of a passenger, the arresting officer must have individualized cause to justify the search. For example, "protective frisks are justified when an officer has a reasonable suspicion that a suspect may be armed. The reasonable suspicion must be based upon specific and articulable facts, which, taken together with any rational infer-

---

[11] *See Wyoming v. Houghton,* 526 U.S. 295, 303 (1999) ([T]he degree of intrusiveness upon personal privacy and indeed even personal dignity . . . differ[s] substantially from the [degree of intrusiveness at issue in a] package search.); *United States v. De Ri,* 332 U.S. 581, 586–87 (1948) (concluding that probable cause to search a vehicle did not confer probable cause to search the person of an occupant).

28

ences that may be drawn from those facts, must establish that the intrusion was reasonable." *State v. McGill*, 2000 WI 38, ¶ 22, 234 Wis. 2d 560, 609 N.W.2d 795 (citations and quotations omitted).

¶ 63. Having determined that the warrantless search of the eyeglass case fits within the exception for searches incident to arrest, it follows that the search of Denk was also constitutional. Denk's admitted ownership of a case containing a methamphetamine pipe gave Officer Hahn probable cause to arrest Denk, and to search incident to that arrest. *See Kluck v. State*, 37 Wis. 2d 378, 390–91, 155 N.W.2d 26 (1967).

IV.

¶ 64. After the circuit court properly denied Denk's motion to suppress the physical evidence obtained in the search, Denk entered a no contest plea to felony possession of methamphetamine. He now asks this court to withdraw the plea on the basis that it was not entered knowingly or voluntarily.

¶ 65. Citing several cases, Denk argues that a plea agreement that leads a defendant to believe that he has obtained a material advantage that cannot be legally obtained necessarily produces a plea that is neither knowing nor voluntary. He asserts that he, his attorney, the prosecutor, and the judge were all under the misapprehension that he could have been convicted of felony possession of paraphernalia, the charge that was dismissed. Denk argues that there was no factual basis for that charge. He claims that because he could not have been convicted of that felony, the benefit of having it dropped was illusory, rendering his plea unknowing and involuntary.

¶ 66. The charge at issue is possession of drug paraphernalia in violation of Wis. Stat. § 961.573(3). The information states that Denk "did knowingly possess with primary intent to use, Methamphetamine pipe to convert Methamphetamine[.]" As a part of the plea bargain, the prosecutor agreed to drop this charge.

¶ 67. Denk asserts that there was no factual basis for charging him under Wis. Stat. § 961.573(3), which criminalizes the possession of drug paraphernalia as follows:

> No person may use, or possess with the primary intent to use, drug paraphernalia to manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, or store methamphetamine or a controlled substance analog of methamphetamine in violation of this chapter.

Violation of this statute is a Class H felony with a maximum of six years in prison. Wis. Stat. § 961.573(3)(b)1.

¶ 68. Denk argues that the proper charge for possession of a methamphetamine pipe is not under sub (3), but rather under sub (1) of the statute:

> No person may use, or possess with the primary intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, *inject, ingest, inhale or otherwise introduce into the human body* a controlled substance or controlled substance analog in violation of this chapter.

Wis. Stat. § 961.573(1) (emphasis added). Violation of this statute is a misdemeanor and carries a maximum penalty of a $500 fine or imprisonment for not more than 30 days. *Id.*

¶ 69. Denk contends that § 961.573(3) does not criminalize possession of paraphernalia related to personal use. He bases his argument on a comparison of the two statutes. The words "inject, ingest, inhale or otherwise introduce into the human body" are included in sub (1), but are omitted in sub (3). From that, Denk concludes that sub (3) applies only to paraphernalia that can be used in the manufacture of controlled substances, whereas sub (1) applies to paraphernalia for personal use. Further, Denk claims that there is no evidence in the record that his pipe was intended for anything other than personal use. Relying on the "plain meaning" of the statute, he did not request an evidentiary hearing.

¶ 70. Neither this court nor the court of appeals has previously interpreted the proper scope of Wis. Stat. § 961.573(3) in this context, and we need not do so today. Our analysis instead focuses on whether Denk received the benefit of the bargain even if it is uncertain whether he could have been convicted of felony possession of paraphernalia.

¶ 71. A defendant who seeks to withdraw a plea after sentencing has the burden to prove by clear and convincing evidence that a manifest injustice would result if the withdrawal were not permitted. *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). A manifest injustice occurs when there are serious questions affecting the fundamental integrity of the plea which rendered it unknowing, involuntary, and unintelligently entered. *State v. Dawson*, 2004 WI App 173, ¶ 6, 276 Wis. 2d 418, 688 N.W.2d 12.

¶ 72. When a prosecutor induces a plea based on a promise that is legally unenforceable, a manifest injustice occurs. *See id.*, ¶ 1 (concluding that the prosecutor's

31

promise to reopen a felony conviction and reduce it to a lesser offense after the defendant successfully completed five years of probation was legally unenforceable because the prosecutor had no authority to amend judgments of conviction); *State v. Woods,* 173 Wis. 2d 129, 496 N.W.2d 144 (Ct. App. 1992) (concluding that the court's promise that the defendant's sentence would run concurrently with a juvenile sentence he was already serving was legally unenforceable because the court lacked the authority to modify a juvenile sentence).

¶ 73. Additionally, in some situations, a mistaken understanding of the law can result in manifest injustice. *State v. Brown,* 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543; *see also State v. Riekkoff,* 112 Wis. 2d 119, 332 N.W.2d 744 (1983). In *Brown,* a manifest injustice occurred when the defendant's plea resulted in the precise legal consequence he entered the plea to avoid.

¶ 74. Brown was charged with various sex offenses related to minor children. *Brown,* 276 Wis. 2d 559, ¶ 2. The prosecutor stated that, in exchange for a no contest plea, he agreed to drop all charges that would require Brown to register as a sex offender or subject him to Chapter 980 civil confinement. *Id.*, ¶ 2. After the plea was entered, Brown learned that, in fact, he would be required to register as a sex offender and that he was subject to Chapter 980 civil confinement. While acknowledging that "[n]ot every misunderstanding of the law by a defendant negates the knowing and voluntary nature of his plea," the court of appeals concluded that Brown's plea was unknowing and involuntary. *Brown,* ¶¶ 11, 13.

¶ 75. In each of those cases, the dispute involved the charge to which the defendant actually pled. Likewise, in each of those cases, the consequence for which the defendant had bargained when he entered the plea to

the charge was a legal impossibility. However, the defendant failed to understand the inevitable consequences of his plea to that charge, thus rendering his plea to the charge unknowing and involuntary.

¶ 76. In contrast, Denk did not plead to the charge in question, rather, his argument relates to his understanding of the charge that was dismissed. Here, the bargain was that in exchange for a plea to a felony possession of methamphetamine charge, the State would dismiss the felony drug paraphernalia charge and two other misdemeanor charges. And that is exactly what happened. By entering into a plea agreement, Denk substantially minimized his exposure. The maximum sentence for the three dismissed charges was six years incarceration for the felony, and six months and thirty days respectively for the two misdemeanors.

¶ 77. The terms of the plea agreement further provided that the State would limit its request at sentencing to jail time rather than prison time for the charge to which he entered a plea. And it did. The maximum sentence of incarceration for felonious possession of methamphetamine was three years and six months.[12]

¶ 78. Unlike the cases upon which Denk relies, this was not a plea based on an illusory promise, but rather it was a plea where the promise was realized. At sentencing, Denk received the benefits of his bargain. He avoided exposure to a substantial period of incarceration. As agreed, the State dismissed the three charges and

_____

[12] The agreement also provided that although Denk's co-defendant, Pickering, was "close to making a deal," Denk would testify for the State at Pickering's trial if the deal fell through. The record reflects that Pickering did indeed enter a guilty plea.

argued for a withheld sentence, three years probation, and six months in jail. The judge sentenced consistent with the State's argument, except Denk received only five months in jail as a condition of probation. Thus, we determine that Denk failed to meet his burden of showing a manifest injustice, entitling him to a plea withdrawal.

## V.

¶ 79. In sum, we determine that the warrantless search was incident to the arrest and was supported by both of the historical rationales at the heart of that exception, namely the safety of the arresting officer and the need to discover and preserve evidence. Thus, we conclude that based on the reasoning in *State v. Pallone,* under the circumstances of this case, the search of the eyeglass case was a permissible search incident to the arrest of the driver of the vehicle.

¶ 80. In addition, we determine that because Denk got the benefit of his plea bargain, he has failed to show by clear and convincing evidence that a manifest injustice would occur if he was not allowed to withdraw his plea. Accordingly, we affirm the orders of the circuit court.

*By the Court.*—The orders of the circuit court are affirmed.