PER CURIAM.
¶ 1 Shawn Christopher Adams appeals a judgment of conviction entered after he pled guilty to one count of possessing marijuana as a second or subsequent offense. On appeal, he contends that the circuit court erroneously denied his suppression motion. We affirm.
BACKGROUND
¶ 2 The State charged Adams with one count of possessing marijuana as a second or subsequent offense. See WIS. STAT. § 961.41(3g)(e) (2015-16).[1] Adams moved to suppress the evidence against him. The relevant facts were developed during the suppression hearing and are not challenged on appeal.
¶ 3 Police officers Michael Mattiolo and Matthew Brooks, the sole witnesses at the hearing, testified that they were dispatched to an apartment building in Milwaukee, Wisconsin, in response to an anonymous caller's complaint about drug dealing out of a specified apartment there. The caller reported seeing a drug transaction in the hallway and provided a description of the suspect.
¶ 4 When Officers Mattiolo and Brooks arrived at the door of the apartment identified by the caller, they smelled burning incense and found this significant because "people use incense a lot to cover up the smell of marijuana." The officers knocked on the door, and Adams answered. His father, who lived in the apartment, was seated in the living room directly opposite the front door. Adams's father said "come on in, officers," and Adams stepped aside to let them enter.[2]
¶ 5 The apartment was "very small, maybe fifty feet in both directions." When in the living room, the officers were "in the middle of the apartment," with the kitchen, bathroom, and bedroom each a few feet away.
¶ 6 The officers observed that Adams seemed "very nervous." Based on Adams's demeanor, Brooks walked across the living room towards the bedroom to put himself in a good position "in case there was a struggle or a fight."
¶ 7 The bedroom was open, and Brooks stepped in and looked inside. He testified that he did so "to make sure nobody else was in there." He went on to explain that he "felt it necessary to check for other individuals in the apartment [because i]t was a drug dealing complaint. Typically, there's numerous subjects involved if there's an operation, weapons involved. I didn't want to be ambushed."
¶ 8 Upon looking into the bedroom, Brooks saw four clear plastic baggies on a nightstand. Based on his training and his twelve years of experience as a police officer, he believed that the substance he observed in the baggies was marijuana. Next to the baggies he saw a pipe consistent with the kind that in his experience is used to smoke marijuana.
¶ 9 Adams said the marijuana was his. The officers seized it.
¶ 10 The circuit court found that the police entered the apartment with consent. The circuit court further found that Brooks's entry into the bedroom was within the scope of the consent and that the marijuana was in plain view upon entry into the bedroom. The circuit court therefore denied the motion to suppress.
¶ 11 Adams thereafter pled guilty to possessing marijuana as a second or subsequent offense. He now appeals, challenging the circuit court's denial of his suppression motion.[3]
DISCUSSION
¶ 12 "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution prohibit unreasonable searches and seizures." State v. Artic , 2010 WI 83, ¶ 28, 327 Wis. 2d 392, 786 N.W.2d 430. Wisconsin courts typically interpret " Article I, Section 11 of the Wisconsin Constitution in tandem with the Fourth Amendment jurisprudence of the United States Supreme Court." See State v. Young , 2006 WI 98, ¶ 30, 294 Wis. 2d 1, 717 N.W.2d 729.
¶ 13 "The legality of a warrantless search is a question of constitutional fact." State v. Denk , 2008 WI 130, ¶ 30, 315 Wis. 2d 5, 758 N.W.2d 775. Accordingly, when we review a suppression order, we uphold the findings of fact made by the circuit court unless they are clearly erroneous. See id. Whether a given set of facts supports a constitutionally permissible search presents a question of law that we consider de novo . See id.
¶ 14 Police entry into a home constitutes a search, see State v. Pinkard , 2010 WI 81, ¶ 30, 327 Wis. 2d 346, 785 N.W.2d 592, and "[w]arrantless searches are per se unreasonable under the Fourth Amendment subject to certain exceptions that are 'jealously and carefully drawn,' " State v. Payano-Roman , 2006 WI 47, ¶ 30, 290 Wis. 2d 380, 714 N.W.2d 548 (citations omitted). The State has the burden of proving that an exception exists. See id. Consent to enter is one such exception. See State v. Sobczak , 2013 WI 52, ¶ 11, 347 Wis. 2d 724, 833 N.W.2d 59.
¶ 15 On appeal, Adams concedes that the officers had consent to enter his father's apartment. He contends, however, that Brooks exceeded the scope of that consent when he stepped out of the living room-where the officers had been admitted-and stepped into the bedroom. In response, the State asserts that police entry into the bedroom fell within the scope of the consent but if not, then the entry into the bedroom was a lawful protective sweep.
¶ 16 We conclude that the State correctly argues that Brooks's entry into the bedroom constituted a lawful protective sweep. We do not address the State's contention that police entered the bedroom with consent. See State v. Hughes , 2011 WI App 87, ¶ 14, 334 Wis. 2d 445, 799 N.W.2d 504 (we decide cases on narrowest possible ground).
¶ 17 Officers may conduct warrantless protective sweeps where necessary to guarantee officer and bystander safety. See Maryland v. Buie , 494 U.S. 325, 327 (1990). A permissible sweep, however, must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. In permitting such sweeps, the Buie court recognized that police are at a disadvantage when they are inside a home and susceptible to "[a]n ambush in a confined setting of unknown configuration." See id. at 333. Thus, while permissible protective sweeps have most commonly occurred incident to an in-home arrest, "[a]n arrest ... does not define the sole context in which a protective sweep can constitutionally occur."See State v. Horngren , 2000 WI App 177, ¶ 20, 238 Wis. 2d 347, 617 N.W.2d 508. Rather, the Fourth Amendment permits protective sweeps "if the searching officer 'possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing' that the area swept harbored an individual posing a danger to the officer or others." Buie , 494 U.S. at 327 (citations and one set of quotation marks omitted). Accordingly, we turn to whether the officer's actions were reasonable under the circumstances here. See Horngren , 238 Wis. 2d 347, ¶ 20.
¶ 18 Although no controlling set of factors governs a determination of reasonableness under the protective sweep doctrine, "the dominant consideration is the seriousness of the criminal conduct" at issue. See 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT , § 6.4(c) (5th ed. 2012). Drug trafficking falls within the scope of serious criminal conduct for purposes of the analysis. See id. Because " 'drug dealers and weapons go hand in hand,' " see State v. Guy , 172 Wis. 2d 86, 96, 492 N.W.2d 311 (1992) (citation omitted), an officer is reasonable in suspecting the presence of weapons when conducting a drug-trafficking investigation, see id.
¶ 19 Also relevant to the reasonableness of a protective sweep is whether the nature of the criminal operation is such that the suspect is unlikely to be a solo participant. See 3 LAFAVE , § 6.4(c). In this case, Brooks testified that "typically ... numerous subjects [are] involved" in drug trafficking operations. The officer's understanding that drug trafficking frequently involves multiple actors contributed to the reasonableness of conducting a protective sweep.
¶ 20 When considering the lawfulness of a protective sweep, " 'the particular configuration of the dwelling is appropriately considered.' " Id. (footnote omitted). Here, the officers offered uncontroverted testimony that the apartment was uncommonly small. Brooks's testimony that he "didn't want to be ambushed" thus reflected a reasonable concern. See United States v. Starnes , 741 F.3d 804, 808 (7th Cir. 2013) (explaining that the potential for an ambush in a confined and unfamiliar setting is precisely the situation in which an officer might need to perform a protective sweep); see also Buie , 494 U.S. at 333.
¶ 21 Another appropriate consideration here is the observation of both officers that Adams was notably nervous in their presence. Wisconsin courts have frequently considered a subject's unusual nervousness when assessing the reasonableness of a protective search. See State v. Kyles , 2004 WI 15, ¶ 54, 269 Wis. 2d 1, 675 N.W.2d 449. We agree with the State that Adams's obvious nervousness is relevant in assessing Brooks's decision to conduct a protective sweep in the apartment.
¶ 22 Further, the sweep was short, cursory, and limited to a visual inspection of a place where a person might be hiding. See Buie , 494 U.S. at 335-36. The evidence showed that Brooks did no more than step across the threshold of an open bedroom to ensure that no one was inside.
¶ 23 Adams nonetheless contends that the protective sweep was unreasonable, relying substantially on his characterization of Brooks's testimony as "describ[ing] a policy of protective sweeps." In State v. Kruse , 175 Wis. 2d 89, 98, 499 N.W.2d 185 (Ct. App. 1993), this court prohibited protective sweeps conducted solely as a matter of routine practice during felony arrests. We do not agree with Adams, however, in his view of Brooks's testimony as reflecting mere adherence to a "standard procedure." Rather, Brooks described the reasons that the specific facts of this case led him to conduct a protective sweep of the open bedroom. Those reasons were the serious nature of drug trafficking, the improbability that the crime involved a solo participant, the confined and unfamiliar space in which the officers were operating, and Adams's notable nervousness.
¶ 24 The State's burden is to present "articulable facts that 'would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing danger to those on the ... scene.' " See id. at 97 (quoting Buie , 494 U.S. at 334 ). In other words, the "question is whether the search was objectively reasonable." Leaf v. Shelnutt , 400 F.3d 1070, 1088 (7th Cir. 2005). We are satisfied that a brief visual inspection of the open bedroom was objectively reasonable here under the totality of the facts and circumstances presented.
¶ 25 A police officer may seize evidence without a warrant "when the officer is lawfully in a position to observe the evidence, the evidence is in plain view of the officer, the discovery is inadvertent, and the item seized in itself ... provides probable cause to believe there is a connection between the evidence and criminal activity." State v. Sanders , 2008 WI 85, ¶ 37, 311 Wis. 2d 257, 752 N.W.2d 713. Here, Brooks observed marijuana in plain view while he was conducting a limited and lawful protective sweep. Adams concedes that "it was readily apparent that the marijuana was contraband." The officers therefore could lawfully seize it. See id. Accordingly, the circuit court properly denied the motion to suppress. We affirm.
By the Court .-Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

In a hearing preceding the suppression motion, the circuit court found that Adams had standing to challenge the entry into his father's apartment based on his status as an overnight guest. That decision is not at issue in this appeal.

A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding the defendant's guilty plea. See Wis. Stat. § 971.31(10).