STATE of Wisconsin, Plaintiff-Respondent,†

v.

Myron C. DILLARD, Defendant-Appellant.

Court of Appeals

*No. 2012AP2044–CR. Submitted on briefs June 11, 2013.
—Decided July 31, 2013.*

2013 WI App 108

(Also reported in 838 N.W.2d 112.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donna L. Hintze*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J. At the time of Myron C. Dillard's plea in this case, all parties mistakenly believed that due to a "persistent repeater" penalty enhancer, he was facing mandatory life imprisonment at trial. With that understanding, Dillard accepted the State's offer to drop the penalty enhancer as well as a false imprisonment charge (on which the defendant faced a maximum ten-year bifurcated sentence), in exchange for the defendant's "no contest" plea. Dillard

accepted this offer, on the advice of his attorney, believing that he was reducing his maximum exposure from mandatory imprisonment for the remainder of his life to a bifurcated forty-year imprisonment sentence, i.e., a maximum initial confinement of twenty-five years plus another possible seven years on the false imprisonment. Dillard was convicted per his plea and sentenced to the maximum, forty years' imprisonment with twenty-five years of initial confinement.

¶ 2. Subsequently, Dillard discovered that the mandatory life imprisonment sentence never applied to him. In reality, at the time of the plea bargain, the maximum penalty he faced on the charge to which he pled was the same forty-year sentence that he "bargained for" in his plea. He now seeks to withdraw his plea on grounds of manifest injustice and ineffective assistance of counsel.

██

¶ 3. The fact that a defendant was misinformed about the maximum penalty applicable to his crime does not necessarily demonstrate manifest injustice, "when the maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence." *State v. Cross*, 2010 WI 70, ¶ 38, 326 Wis. 2d 492, 786 N.W.2d 64. In the circumstances at hand, however, we can only conclude that the maximum penalty Dillard believed he was facing—the harshest criminal sentence available in our state, mandatory life imprisonment with no possibility of release—*was* "substantially higher" than the actual allowable sentence. *See id.*, ¶ 39. In view of this error, the burden was on the State to demonstrate that the defendant's plea was nonetheless knowing, voluntary, and intelligent. *See id.* The circuit court thought the showing had been made. We do not. The unassailable

335

fact is that Dillard did not receive the benefit he bargained for because the so-called benefit never existed. It was an illusory benefit. We reverse.

*Background Facts*

¶ 4. The charges against Dillard arose out of an armed robbery that took place in December 2009. Tracy Yarnell Lira was sitting in the driver's seat of her car in a Shopko parking lot in Menasha when a man opened the passenger side door and sat in the front seat. He threatened Lira with a gun, telling her "drive and don't look at me," and directing her to drive around the area as he demanded money and asked her about her personal life. Eventually he directed her to turn near some apartments and to wait and count to thirty before driving away.

¶ 5. With Lira's help, investigators prepared a composite sketch of the robber. Dillard's probation agent saw the sketch and thought it looked like Dillard, so he became a suspect. Investigators showed Lira a photo array of potential suspects that included Dillard's photo, but Lira was unable to identify Dillard as her attacker in that array. Subsequently, however, while surfing the internet on her own, Lira found a photo of Dillard in a web site showing photos of Wisconsin sex offender registrants. She contacted police to tell them that she thought Dillard was her attacker.

¶ 6. Dillard was arrested and charged with two counts, armed robbery in violation of Wis. Stat. § 943.32(2)[1], as a persistent repeater under Wis. Stat. § 939.62(2m)(c); and false imprisonment in violation of Wis. Stat. § 940.30, as a repeater under § 939.62(1)(b).

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

With the penalty enhancer based on Dillard's alleged status as a "persistent repeater," the applicable sentence for the armed robbery charge was life imprisonment without the possibility of parole. Dillard also faced a maximum of ten years on the false imprisonment charge, due to his alleged repeater status.

¶ 7. The State offered Dillard a plea agreement under which the State would drop the persistent repeater allegation and would drop the false imprisonment charge altogether, in exchange for Dillard's pleading no contest to an armed robbery charge. As his attorney explained to him during the negotiation process, this meant that his maximum penalty would fall from life imprisonment with no possibility of parole on the first charge, plus ten years' imprisonment on the second charge (of which a maximum of seven years would be initial confinement),[2] to "not more than 40 years and a fine of $100,000 or both" which would be bifurcated into, at worst, twenty-five years of initial confinement,[3] with the remaining fifteen years as extended supervision (free but with the possibility of being reincarcerated should he violate conditions of his supervision). *See* Wis. Stat. § 973.01(2)(b) and (d).

¶ 8. Dillard accepted this offer and was convicted pursuant to the plea agreement in August 2011. In October, the court sentenced him to the maximum of

[2] The enhanced penalty on the false imprisonment charge would have been bifurcated so as to impose, at maximum, seven years of initial confinement and at least three years of extended supervision. *See* Wis. Stat. §§ 940.30, 939.62(1)(b) and (2), 939.50(3), and 973.01(2).

[3] In a letter discussing the plea offer, Dillard's attorney mistakenly stated that his sentence on the armed robbery charge under the plea bargain would be bifurcated as "20 years of Initial Confinement and 20 years of Extended Supervision."

forty years in prison, bifurcated as twenty-five years of initial confinement and fifteen years of extended supervision.

¶ 9. Subsequently, Dillard moved to withdraw his plea on the basis that it was not knowingly, voluntarily, and intelligently entered into because he "misunder-[stood] . . . the direct consequences of his plea," in that, in reality, the persistent repeater enhancer was never applicable. Specifically, the persistent repeater enhancer was a legal impossibility because it only applies if, "of the 2 or more previous convictions [required to trigger persistent repeater status], at least one conviction occurred before the date" of one of the other convictions, WIS. STAT. § 939.62(2m)(b)1., whereas all of Dillard's prior convictions supporting the persistent repeater allegation happened on the same date. Dillard also argued that withdrawal should be permitted because his attorney's failure "to understand the applicable law and advise him he could not be sentenced as a persistent repeater" deprived him of the effective assistance of counsel.

¶ 10. In the postconviction hearing, the State conceded that no persistent repeater enhancer ever applied to Dillard's case. In considering Dillard's motion to withdraw the plea, the circuit court heard testimony from Dillard and his trial counsel at a *Machner*[4] hearing. Dillard testified that he initially planned to take the case to trial because he thought the State had a "weak case"; namely, issues with respect to the victim's identification of Dillard. After the plea was offered, and with his attorney's advice, he decided that he "couldn't take that chance with . . . [a sentence of] life without

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

parole." His attorney testified that Dillard "had talked to me about a number or a possible sentence that he thought might still give him an opportunity for a life on the outside with his wife" and that before the plea offer they were "preparing the case for trial" and determining "whether . . . we thought the case should proceed to trial or he should plea." She also confirmed that before the plea offer they were considering the evidence and the strength of the case, and that the "most significant" reason why she advised Dillard to "give serious consideration" to the plea was the persistent repeater enhancer.

¶ 11. Testimony by Dillard and his attorney at the *Machner* hearing left open the possibility that Dillard might have accepted the plea even if the persistent repeater enhancer had never been charged. His attorney testified that if she had been aware that the enhancer was legally inapplicable, she still would have advised him to take the plea. This is because the State had agreed to recommend eight years in prison, which she thought was a good bargain. And, in response to questioning by the circuit court, Dillard acknowledged that if the court's actual sentence had been the same as the sentence the State recommended—i.e., eight years' initial confinement instead of twenty-five—that Dillard would have been satisfied. Still, Dillard insisted that "getting rid of the persistent repeater" was the most significant part of the plea deal, to him.

¶ 12. At the conclusion of the *Machner* hearing, the court denied Dillard's motion to withdraw the plea, explaining as follows:

> I think the [*State v. Denk*, 2008 WI 130, ¶ 71, 315 Wis. 2d 5, 758 N.W. 2d 775] case is squarely on point here. I think [Dillard] got the benefit of the bargain. Upon questioning from the court, he would have been

satisfied with my sentence if I went along with his attorney's recommendation, he would have been satisfied if I went along with what the State—as far as what their recommendation is, and the only reason we're here on appeal is because I did not go along with those recommendations and I gave him the maximum sentence which he knew he could have received from me. This is all a matter, in my opinion, from listening to him, now that he's got the sentence he doesn't like it and now he wants to appeal it and find a way to do so.

As far as ineffective assistance of counsel . . . there has to be some type of prejudice. In this case there's not. There's many reasons why he entered this plea. Although they say that the persistent repeater . . . was important, I believe that the other acts' evidence of the almost identical type crime taking place with a sexual assault and that evidence coming in on this case would have been devastating to any type of defense in this case, and that's, in my opinion, the reason why he reached this agreement because, as counsel indicates in her letter and here in testimony, there are a lot of negatives and she still would have recommended, even if the persistent repeater would automatically be dismissed, that she would have recommended this to him.

So I'm going to find that there's no prejudice whatsoever, even if there is any ineffective assistance, which I don't think there is. Therefore, I'm going to dismiss the motion, and I guess we go on to the Court of Appeals.

This appeal follows.

### Analysis

¶ 13. After conviction and sentencing, a defendant seeking to withdraw a plea must demonstrate by clear and convincing evidence that withdrawal is required to correct a manifest injustice. *State v. Bentley*,

201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). A plea that was "not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right." *Cross*, 326 Wis. 2d 492, ¶ 14. Whether a defendant's plea was knowing, voluntary, and intelligent is a question of constitutional fact subject to a mixed standard of review on appeal: the circuit court's findings of historical fact are accepted unless they are clearly erroneous, but the ultimate legal question is decided de novo. *Id.* A defendant's disappointment with the sentence received after the plea bargain "is no ground for withdrawal of a guilty plea," in itself. *State v. Booth*, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987). Manifest injustice is shown if the defendant establishes "serious questions affecting the fundamental integrity of the plea." *Denk*, 315 Wis. 2d 5, ¶ 71.

■■

¶ 14. When the defendant pleaded guilty based upon a mistaken understanding of the law, whether the plea may be withdrawn depends on whether the defendant received the benefit of the plea bargain despite the mistake of law. *Id.*, ¶ 70. The fact that the actually-applicable penalty for the crime was lower, but not substantially lower, than the penalty the defendant thought he was facing at the time of the plea, does not undermine the plea. *Cross*, 326 Wis. 2d 492, ¶ 46. For instance, in *Cross*, the defendant "was told he faced a maximum exposure of 25 years initial confinement with 15 years extended supervision, when the actual maximum was 20 years initial confinement with 10 years extended supervision." *Id.* The court determined that having "pled guilty under the belief that he faced a higher, but not substantially higher, maximum penalty" Cross, as a matter of law, was unable to show that his

plea was unknowing, involuntary, or unintelligent or that withdrawal was "necessary to correct a manifest injustice." *Id.*

¶ 15. Similarly, in *Denk*, the court rejected a defendant's motion to withdraw a plea due to a legal mistake because despite the mistake the defendant there received "exactly what" he had bargained for. *Denk*, 315 Wis. 2d 5, ¶ 76. The mistake in *Denk* related to one of the charges that was dropped, rather than the charge to which Denk pled; at the time of the plea, Denk (and everyone else) thought Denk faced two felony charges, for felony possession of drugs and felony possession of drug paraphernalia, along with two misdemeanor charges. *Id.*, ¶¶ 66, 76. In exchange for Denk's pleading guilty to the felony drug possession charge, the State agreed to drop the felony paraphernalia charge and the two misdemeanors. *Id.*, ¶ 76. Hence, "Denk substantially minimized his exposure," with the dismissal of charges that exposed him to a total maximum addition of seven years of incarceration. *Id.*

¶ 16. In his motion to withdraw his plea, Denk argued that, in reality, the particular type of paraphernalia he possessed never supported the felony paraphernalia charge but only a misdemeanor paraphernalia charge. *Id.*, ¶¶ 23–24. He argued that this mistake of law rendered his plea bargain unknowing and involuntary, providing only an "illusory" benefit. *Id.*, ¶ 23. The court rejected Denk's reasoning, pointing out that, even if Denk were correct about whether his paraphernalia possession was chargeable as a felony, he still received the benefit of his bargain because it "substantially minimized his exposure." *Id.*, ¶ 76–77.

¶ 17. While Dillard's case bears superficial similarity to *Denk*, the reasoning in *Denk* does not extend to excuse the mistaken understanding about the legally

applicable penalty for the armed robbery charge during Dillard's plea negotiations. As *Denk* pointed out, the cases in which a mistake of law has allowed a defendant to withdraw a guilty plea bear three similarities: (1) the mistake of law "involved the charge to which the defendant actually pled," (2) "the consequence for which the defendant had bargained when he entered the plea to the charge was a legal impossibility," and (3) "the defendant failed to understand the inevitable consequences of his plea to that charge." *Id.*, ¶ 75; *see also State v. Brown*, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543 (permitting plea withdrawal where plea was entered under mistaken belief that the charge he agreed to plead to did not trigger sex offender registration or Wis. Stat. ch. 980 confinement); *State v. Woods*, 173 Wis. 2d 129, 496 N.W.2d 144 (Ct. App. 1992) (finding manifest injustice when the plea was entered under the mistaken belief that the sentence for the charge being pled to could run concurrently with juvenile sentence); and *State v. Riekkoff*, 112 Wis. 2d 119, 332 N.W.2d 744 (1983) (permitting withdrawal where bargained-for benefit, preserving the right to appeal a particular issue, was legally unenforceable).

¶ 18. The same factors are present here. First, the legal mistake that marred the plea negotiations relates to the charge to which Dillard eventually pled, the armed robbery charge. The persistent repeater enhancer is not a separate charge and had no viability except as an allegedly applicable penalty enhancement on the armed robbery charge. Second, the consequence that Dillard bargained for in the plea—eliminating the persistent repeater enhancer (as well as the false imprisonment charge) and thereby eliminating the risk that he would be sentenced to spend the remainder of his life in prison—was actually a legal impossibility.

343

And, third, Dillard failed to understand the inevitable consequence of the charge, as did Dillard's own attorney, the State, and the court itself, in that the specter of a life sentence was illusory all along.

¶ 19. Like the mistake in *Denk*, the mistake at issue in *Cross* was much less substantial than the mistake in Dillard's case, amounting to a five-year difference in the total maximum applicable penalty. *Cross*, 326 Wis. 2d 492, ¶ 46. Here, in contrast, the situation Dillard believed existed at the time he made the plea bargain—that he was facing life without the possibility of ever being paroled or on extended supervision—amounted to an indefinitely longer period of imprisonment. Perhaps most importantly, at the time of his plea, Dillard thought that a conviction at trial would absolutely foreclose the possibility that he would ever live in freedom again. Finally, while it is true that Dillard also obtained dismissal of the false imprisonment charge, which posed the risk of an additional seven years' imprisonment, we do not think that sentence was large enough to be much of a factor in his consideration of the plea offer, because of the overwhelming importance of getting rid of the threat of life imprisonment.

■■■

¶ 20. For similar reasons, Dillard's plea withdrawal is also justified under the theory of ineffective assistance of counsel. In the plea withdrawal context, a defendant's plea may be withdrawn due to the ineffective assistance of counsel if trial counsel's performance was deficient and the defendant demonstrates "a reasonable probability that, but for [that deficiency], he would not have pleaded guilty and would have insisted on going to trial." *Bentley*, 201 Wis. 2d at 312 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). With respect to

the deficiency of trial counsel's performance, on appeal the State has not challenged trial counsel's performance as "below an objective standard of reasonableness."[5] And the State's arguments that this mistake was not prejudicial are unconvincing because, as just stated, a penalty of mandatory life incarceration with no possibility of parole is "substantially higher" than a maximum sentence of twenty-five years and a state recommendation of eight years. Moreover, the mistaken belief that the penalty enhancer applied was carried into the sentencing itself, when the court remarked "three strikes you're out," and that if it were not for the plea bargain, "you'd be sitting the rest of your life in prison as well as you should be." The record here demonstrates that Dillard's criminal defense was prejudiced by his trial counsel's failure to recognize that the persistent repeater enhancer was never legally applicable.

¶ 21. Finally, although we agree with the circuit court that Dillard may have taken the plea offer even if he had not thought he was facing a mandatory life sentence, and that Dillard may have chosen not to appeal if his ultimate sentence had been closer to the state-recommended eight years of incarceration, neither factor overcomes the fundamental error of law that pervaded the plea negotiations and sentencing here. The difference between mandatory life incarceration, i.e., a guarantee that one will die behind bars, and a maximum of twenty-five years' incarceration, i.e., a guarantee that at the very most one will face twenty-five years in prison, is substantial and undermined the fundamental integrity of this defendant's plea. Eight years has a nice ring to it. But a recommendation is just

---

[5] Though the circuit court remarked that it did not "think" that there was "any ineffective assistance," the arguments below also focused, mainly, on the prejudice prong.

that—a recommendation. The trial court does not have to follow it. And criminal defendants are reminded of that at the plea hearing. Eight years' recommendation notwithstanding, his maximum exposure was reduced from being in prison the rest of his life, to being in prison for a maximum of twenty-five years plus seven years. A lifetime behind bars is simply far greater than a twenty-five year sentence. The hope that one will live long enough to have a life outside the prison walls is, as the advertisement goes, priceless. Dillard thought he had to bargain for that hope. We reverse.

*By the Court.*—Judgment and order reversed and cause remanded.