PATIENCE DRAKE ROGGENSACK, J.
¶ 113. {dissenting.) Myron C. Dillard was convicted of armed robbery based on his plea of no contest. He received the maximum permissible sentence for armed robbery. He moved to withdraw his plea, asserting that manifest injustice will result if his plea is not vacated. Dillard asserts his plea was not entered knowingly and intelligently because his counsel did not tell him that the State could not prosecute him as a persistent repeater for armed robbery. He claims ineffective assistance of counsel based on the same assertion.
¶ 114. In order to withdraw his plea subsequent to sentencing, Dillard bears the burden to prove manifest injustice by clear and convincing evidence. State v. Bentley, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). Dillard failed to shoulder that burden because he submitted insufficient factual-objective information at the plea withdrawal hearing. Furthermore, the circuit court found that Dillard's testimony was not credible. Accordingly, I would reverse the court of appeals; affirm the circuit court; and I respectfully dissent from the majority opinion.
I. BACKGOUND
¶ 115. The State's charges against Dillard arose from Dillard's victimization of a young woman, T.L., on December 4, 2009. T.L. was seated in her car in a parking lot when Dillard opened the front passenger-side door and entered her car. He forcefully placed a gun against her right shoulder and told her to drive. T.L. complied, fearing Dillard would shoot her if she did not. Dillard asked for money, and T.L. gave him all she had. *579 He ordered her to drive to various locations, then to stop, and he exited the car. As he was leaving, he told her not to call the police or he would come after her and her family and that he knew where to find her.
¶ 116. Dillard was convicted of armed robbery, contrary to Wis. Stat. § 943.32(2) (2011-12).[1] His conviction was based on a plea agreement wherein the State dismissed a count of false imprisonment, charged as a repeater; dismissed a persistent repeater charge, in regard to the armed robbery; and the district attorney recommended eight years of incarceration consecutive to the time that Dillard was serving. Dillard was then serving a sentence of four years, seven months and nine days based on revocation of his parole for two past armed robberies and two sexual assaults, and revocation of his extended supervision for convictions of theft and identity theft.
¶ 117. At the plea hearing, the court explained to Dillard that a conviction of armed robbery had a maximum imprisonment of 40 years, with 25 years incarceration and 15 years extended supervision. The court asked Dillard if he understood that the court was not bound by any plea agreements and that the court could sentence him to the maximum for the crime of conviction. Dillard said that he understood. The court thoroughly reviewed the constitutional rights that Dillard was giving up through his plea and informed him of the consequences of his plea if he were not a United States citizen and asked Dillard if he understood. Dillard said, "Yes, Your Honor." The court asked whether Dillard was satisfied with the representation that his attorney had provided to him, and Dillard said *580 that he was. The court also asked Dillard whether he wanted to ask the court any questions, and Dillard said, "No, sir, none." The circuit court then concluded:
The court will find that the defendant understands these proceedings and is entering his plea to Count 1 without the repeater freely, voluntarily, and intelligently, and I find that there's a factual basis for the plea and, therefore, accept the same and will adjudicate him guilty. Count 2 will be dismissed.
¶ 118. At the time the plea was accepted, the assistant district attorney, trial counsel and the judge all mistakenly believed that the armed robbery charge was subject to a persistent repeater charge.[2] If that belief had been correct, Dillard would have been subject to a mandatory sentence of life in prison pursuant to Wis. Stat. § 939.62(2m)(c).
¶ 119. In addressing the victim, her family and the court at sentencing, Dillard admitted he committed armed robbery, saying, "Good morning, everybody. Well, I'm the person who robbed Miss [T.L.] in December. . . . Not only did I rob Miss [L.] of money, I frightened her half to death as well. ... So I'm sorry, Miss [L.] for what I've done in harming you." The defendant was then 50 years of age.
¶ 120. T.L.'s father spoke at sentencing, and in a prior letter to the court, T.L.'s father said:
Among other consequences of the assault, [T.] has been unable to sleep, has had nightmares in which she relived the assault and has had to relive the experience over and over each time she has come to court either *581 testifying or expecting to testify. She has been unable to concentrate, and has experienced fear, anxiety, and apprehension. In addition, she has suffered financially —she is unable to go to work at times, has been unable to get back into the car in which the robbery took place, has been in counseling and has required medication to deal with the consequences.
¶ 121. Testimony given at sentencing explained that during the robbery Dillard had "made threats that he would come back to her family after this occurred if she told the police and he knew where to find her."
¶ 122. In deciding what sentence it would impose, the court knew of the ongoing problems of the victim who suffered from post-traumatic stress disorder because of Dillard's crimes and who had had an acute reaction to the stress of testifying that required hospitalization after the final hearing.
¶ 123. The court was very concerned about the repetitive nature of Dillard's conduct as this was the third robbery of a young woman under very similar circumstances, the other two involving sexual assaults as well as robbery. The court said:
What goes towards character is the fact that you had two other very similar incidents in 1989 with robberies and sexual assaults. You sat — served a prison sentence on those, you were paroled and were revoked. You were on supervision at the time of this incident. You had Sexual Offender Treatment, and you had all of the treatment in the prison system, and you still got out and you still did this, and you did it again. That goes towards character. That also goes towards the need to protect the public.
In this case, when you have treatment, you go through everything, your rehabilitative needs are addressed in prison, and you get out and you still do the same *582 thing. ... What I'm going to do on this case is a 40-year prison sentence, 25 years[] initial confinement, 15 years[] extended supervision. I just think he needs a long supervision if he gets out. I figure if he's 75, at least maybe he's not going to be doing this anymore when he gets out. I'm going to run it concurrent to his other sentences, so I don't know where — where he's at with credit. The reason I'm doing it concurrent is because the reason he's sitting now is because of these facts. That's the reason he got revoked.
¶ 124. Dillard, by counsel, moved to withdraw his plea. He contended that the benefit of dismissing the persistent repeater charge was "illusory," and caused his plea to be unknowing and unintelligent. He also claimed his trial counsel was ineffective in failing to alert him to the legal conclusion that he was not subject to a persistent repeater charge. He contended that refusing to permit him to withdraw his plea to armed robbery would result in manifest injustice.
¶ 125. The circuit court held a Machner[3] hearing, wherein it considered the testimony of Dillard and of trial counsel, as well as the submissions of Dillard and the State. Dillard testified that he was concerned about the potential for life in prison without the possibility of parole or extended supervision. He said that he discussed this with his attorney, as well as the district attorney's offer to recommend eight years confinement and his attorney's recommending five years confinement and 15 years extended supervision. He said that they also discussed the district attorney's agreement to dismiss the charge of false imprisonment and its repeater charge. Dillard asserted that he would not have *583 pled, but would have gone to trial, if he had known that the State could not prosecute him on the persistent repeater charge.
¶ 126. The court questioned Dillard further to assess his credibility regarding his assertion that he would not have pled, but would have gone to trial if he had known that he could not be prosecuted on the persistent repeater charge. The court did so by asking whether his motion to withdraw his plea was grounded in the sentence imposed. Dillard was asked:
Q. If I would have gave you the five years' initial confinement, would you have been satisfied with that sentence?
A. Of course.
Q. If I would have went along with what the State said, the eight years' initial confinement, would you have been satisfied with that?
A. Of course. That's better than a life without parole.
Q. Your dissatisfaction with my sentence was the fact that I gave you the — the maximum, correct?
A. Um — I guess. Yes, I guess so.
¶ 127. Subsequent to the above colloquy with the court, in response to questions from postconviction counsel, Dillard said that he understood that the judge could sentence him to 40 years imprisonment for the armed robbery charge when he made his plea.
¶ 128. Trial counsel was next to testify. She explained the preparation for trial and her representation of Dillard in the revocation proceeding where she had seen [T.L] testify as a very credible witness. She spoke of the State's offer and said:
*584 I also advised him that, even if he felt there were some problems with the State's case — and he and I had acknowledged there may be — that he had to take into consideration that if he went to trial the jury would likely hear things that would be very devastating towards his case, like the fact that the victim had identified him on a sex offender database. I also reminded him that the victim had testified at a revocation hearing and that she testified in the proceedings rather credibly and that an administrative law judge had made a similar comment, and in light of all those circumstances, as well as his ability to argue for a lesser sentence, I thought he should give serious consideration to accepting the State's offer.
Testimony at the plea withdrawal hearing showed that before Dillard pled, his trial attorney explained weaknesses in his case to him. Trial counsel said that T.L. identified Dillard as the perpetrator of the armed robbery at the revocation hearing and that she had testified very credibly. Therefore, earlier concerns about the strength of her identification were not significant. Dillard's attorney also told him that at trial the jury would hear that T.L. had identified him from his picture on the sex offender registry, and that would be "devastating" to his case.
¶ 129. When trial counsel was asked whether Dillard ever indicated to her why he agreed to the State's offer, she said:
I believe it was the totality of the circumstances, the dismissal of Count 2, the dismissal of any repeater enhancer at all on Count 1, even just a simple repeater for having been convicted of prior felonies, the fact that the State had a motion filed that would introduce to the jury other acts that had very similar type of conduct that I believe would come in, which I told Mr. Dillard about, the fact again that we had seen the victim testify *585 at a prelim [inary] and at a revocation hearing and she did not waiver in her identification of the defendant in the testimony. All of those things[.]
Counsel explained that she told Dillard that other acts evidence would be admitted at trial because of the similar types of victimization that led to his two prior armed robbery convictions. She again explained that they had seen T.L. testify at two prior hearings and that T.L. was firm and convincing in her identification of Dillard as the perpetrator of the armed robbery.
¶ 130. When trial counsel was asked if she had known before his plea that Dillard was not subject to a persistent repeater charge in regard to armed robbery would she nevertheless have recommended that he accept the plea bargain, she said that she would have. She explained that he was facing 40 years on Count 1 and ten years on Count 2 and there were "overwhelming negative facts” that she believed would come in at the trial. When the court asked, "Did Mr. Dillard ever say to you, T will take any deal whatsoever if you can get the persistent repeater dismissed?'" Trial counsel said, "No."
¶ 131. Based on the information provided, including Dillard's testimony, the circuit court denied Dillard's motion, finding that he got the benefit of his plea bargain and concluding that Dillard suffered no prejudice. The court of appeals reversed. Relying on cases where a circuit court had erred[4] in regard to the charge *586 to which the defendant pled, the court of appeals extended the holdings of those cases to a charge that was dismissed. The court of appeals concluded that State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, controlled because the charging error "marred the plea negotiations" and was more substantial than the mistake in Cross. State v. Dillard, 2013 WI App 108, ¶¶ 18-19, 350 Wis. 2d 331, 838 N.W.2d 112. The court of appeals also concluded that Dillard was provided ineffective assistance of counsel based on the same charging error. Id., ¶ 20.
II. DISCUSSION
A. Standard of Review
¶ 132. Dillard claims that manifest injustice will result if his plea is not vacated because it was not entered knowingly and intelligently and because trial counsel was ineffective in not telling him that the State erroneously charged him as a persistent repeater with regard to armed robbery. Whether a plea has been entered knowingly and intelligently presents a question of constitutional fact that we review independently. Cross, 326 Wis. 2d 492, ¶ 14. Whether counsel was ineffective presents a mixed question of fact and law. State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). We will not reverse a circuit court's factual findings unless they are clearly erroneous. Id. However, we independently review whether counsel's performance was deficient and prejudicial. Id. at 128.
*587 B. Plea Withdrawal
¶ 133. Dillard claims that if he had known that the State could not prosecute him as a persistent repeater in regard to the armed robbery, he would not have pled, but would have gone to trial on the charges of armed robbery and false imprisonment as a repeater.[5]
1. General principles
¶ 134. There is the potential that a plea may not have been entered knowingly, intelligently and voluntarily if the colloquy conducted by the circuit court was constitutionally insufficient. State v. Bangert, 131 Wis. 2d 246, 255, 389 N.W.2d 12 (1986). A plea may be involuntary either because the defendant does not understand the charge to which he pleads or because he does not understand the constitutional rights accorded to him that he is waiving by pleading. Id. at 265-66.
¶ 135. Furthermore, a plea may be withdrawn if the circuit court does not comply with Wis. Stat. § 971.08. Id. at 274. "The initial burden rests with the defendant to make a prima facie showing that his plea was accepted without the trial court's conformance with sec. 971.08." Id. If the defendant makes such a showing and alleges that he did not know or understand the information that § 971.08 requires be provided to him at the plea hearing, "the burden will then shift to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." Id.
*588 ¶ 136. The specific obligations that Wis. Stat. § 971.08 places on the circuit court when a plea is forthcoming relevant to our inquiry herein are as follows:
(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
¶ 137. Plea withdrawal based on a constitutionally inadequate colloquy or based on a statutorily insufficient colloquy requires error by the circuit court. Id. at 274-76. Circuit court error in informing the defendant is required in order for the burden to shift to the State once the defendant makes a prima facie showing of error and alleges that he did not know or understand the information the circuit court was required to provide.
¶ 138. However, there are times when plea withdrawal after sentencing is permitted and the error does not lie with the circuit court, but rather is found elsewhere. In such cases, a defendant is entitled to withdraw a guilty or no contest plea upon his proving by clear and convincing evidence that a manifest injustice will result unless the plea is vacated. Bentley, 201 Wis. 2d at 311. Ineffective assistance of counsel is such an error. Id.
¶ 139. In order to be entitled to withdraw a plea after sentencing based on ineffective assistance of counsel, the defendant bears the burden to prove by clear *589 and convincing evidence "that counsel's performance was both deficient and prejudicial." Id. at 312 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). In order to satisfy the prejudice prong of the Strickland test, a defendant seeking to withdraw his or her plea must prove that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See id. at 312. In order to meet his proof obligation, "[a] defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions." See id. at 313 (citing State v. Saunders, 196 Wis. 2d 45, 51, 538 N.W.2d 546 (Ct. App. 1995) (explaining that a defendant must provide evidence that is "factual-objective" rather than information that is "opinion-subjective," and a defendant's saying that he would have gone to trial if counsel had properly advised him is an opinion, not a fact)).
¶ 140. Bentley contended that he would not have pled if "counsel correctly informed him about his minimum parole eligibility date." Id. at 316. In evaluating Bentley's assertion, we explained that Bentley's allegation, without more, was not sufficient to grant his motion to withdraw his plea. Id.
¶ 141. We cited Santos v. Kolb, 880 F.2d 941 (7th Cir. 1989), abrogated on other grounds by Padilla v. Kentucky, 599 U.S. 356 (2010), with approval. Bentley, 201 Wis. 2d at 314. Santos held that a "specific explanation of why the defendant alleges he would have gone to trial is required." Id. (quoting Santos, 493 U.S. at 943). The First Circuit, the Tenth Circuit and the D.C. Circuit are in accord with the Seventh Circuit in this regard. United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), rev'd on other grounds, 520 U.S. 751 (1997) (concluding that a defendant's self-serving state *590 ment that if his counsel had given him complete advice, he would not have pled guilty is not sufficient to prove prejudice); United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993) (mere allegation that but for counsel's inaccurate information regarding sentencing, he would have gone to trial held to be insufficient to establish prejudice); United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993), cert. denied, 510 U.S. 852 (1993) (explaining that a bare allegation that he would have gone to trial is insufficient to withdraw plea).
¶ 142. In addition, federal courts look to whether a defendant has made a viable claim of innocence of the crime of conviction. United States v. West, 392 F.3d 450, 456 (D.C. Cir. 2004). This amounts to affirmatively advancing an objectively reasonable argument that the defendant is innocent of the crime to which he pled. United States v. Cray, 47 F.3d 1203, 1209 (D.C. Cir. 1995).[6]
2. Dillard's plea withdrawal motion
¶ 143. Dillard does not identify a circuit court error that would result inaBangert-type analysis. That is, he does not contend that the circuit court's colloquy was either constitutionally insufficient or failed to satisfy the requirements established in Wis. Stat. § 971.08.[7] Rather, he objects to a charging error that the district attorney made and that his attorney did not *591 recognize and explain to him before he pled no contest. Accordingly, Bentley, not Bangert, provides the analytic framework by which we evaluate Dillard's motion for plea withdrawal. In a Bentley proceeding, the defendant has the burden of proof throughout the proceedings; it never shifts to the State, as it may in a Bangert proceeding. State v. Burton, 2013 WI 61, ¶ 7, 349 Wis. 2d 1, 832 N.W.2d 611.
¶ 144. State v. Denk, 2008 WI 130, 315 Wis. 2d 5, 758 N.W.2d 775, is important when analyzing a claim that a defendant's plea was not knowing, intelligent and voluntary because there was a charging error of which defendant was unaware. Denk was charged with felony possession of methamphetamine; felony possession of THC with intent to deliver; misdemeanor possession of marijuana; misdemeanor possession of drug paraphernalia; and felony intent to convert methamphetamine, contrary to Wis. Stat. § 961.575(3). Id., ¶¶ 17,19. Denk focuses on the last felony charge.
¶ 145. In that case, the district attorney and Denk entered into a plea agreement wherein Denk agreed to plead to felony possession of methamphetamine. In exchange, the district attorney agreed to dismiss all other charges, including felony intent to convert methamphetamine, and to recommend that Denk serve six months in the county jail as a condition of probation. Id., ¶ 21. The district attorney and Denk did as they agreed. After determining that Denk was satisfied with his attorney's services and that Denk's plea was knowing and voluntary, the court accepted Denk's no contest plea and placed Denk on probation, with five months in the county jail as a condition of probation. Id., ¶ 22.
¶ 146. Several months later, Denk moved to withdraw his plea, asserting that there was no factual basis for charging him with felony possession of metham *592 phetamine paraphernalia under Wis. Stat. § 961.573(3). Id., ¶ 23. He contended that because he could not have been convicted of the charge, the district attorney's offer to drop the charge was "an illusory benefit" that rendered his plea unknowing and involuntary. Id.
¶ 147. We affirmed the denial of Denk's motion to withdraw his plea. Id., ¶ 78. We explained that State v. Brown, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543 and State v. Riekkoff, 112 Wis. 2d 119, 332 N.W.2d 744 (1983), the cases on which Denk relied, involved problems with the charge to which the defendant actually pled, while Denk's allegations involved a charge to which he did not plead. Denk, 315 Wis. 2d 5, ¶ 75. We also explained that "[u]nlike the cases upon which Denk relies, this was not a plea based on an illusory promise, but rather it was a plea where the promise was realized." Id., ¶ 78. Stated otherwise, Denk received the benefits of his bargain with the district attorney because the district attorney honored the plea bargain. Id.
¶ 148. Mistakes in charging may be caused by insufficient facts known at the time the complaint or information is filed or the need to do further legal research. They probably occur with some frequency, as the records presented to us often show charges that have been dismissed on cases that have gone to trial. Denk establishes that a mistakenly charged crime that is dismissed does not form part of the conviction and is not subject to the same scrutiny as the crime of conviction. For example, although the circuit court must establish the factual basis for the crimes to which a defendant pleads, the court has no such obligation in regard to crimes charged but later dismissed.
¶ 149. Surely the majority opinion can't be suggesting that the circuit court is obligated to inform a defendant about facts that the State would have had to *593 prove for dismissed charges, as well as facts the State would be required to prove for charges to which a defendant pleads. This would be an extraordinary burden to place on circuit courts. However, Dillard, who is dissatisfied with the results of his plea bargain, is attempting to make the circuit court somehow responsible for the bargain he made, but now seeks to avoid.
¶ 150. Cross also is helpful when considering mistaken information, although it is not as "on point" as is Denk because Cross involved a claimed circuit court error in giving Cross mistaken information about the crime to which he pled. Therefore, Cross applied a Bangert analysis, not the Bentley analysis that is applicable here. Cross, 326 Wis. 2d 492, ¶ 4.
¶ 151. Subject to a plea bargain, Cross pled guilty to second-degree sexual assault, which has a maximum imprisonment of 30 years, with 20 years incarceration and 10 years extended supervision. However, at the plea hearing, "counsel for Cross informed the circuit court that second degree sexual assault was a Class C felony and that the maximum total sentence was 40 years," with the potential of 25 years incarceration and 15 years extended supervision. Id., ¶ 8. The district attorney recommended only 24 months of initial confinement. Id., ¶ 7. At the plea hearing, the circuit court repeated the potential for the same maximum punishments defense counsel had incorrectly set out. Id., ¶ 8.
¶ 152. At sentencing, the court reviewed numerous victim impact statements that explained that Cross had molested or sexually assaulted many family members. Id., ¶ 9. The victim in the case then before the court was Cross' ten-year-old great-granddaughter. Id., ¶ 6. After explaining that the court did not want to give Cross another opportunity to molest other family members, the court sentenced Cross to the maximum that it *594 believed was available, i.e., 25 years incarceration and 15 years of extended supervision. Id., ¶ 10.
¶ 153. Cross moved for postconviction relief, requesting plea withdrawal and resentencing. Id., ¶ 11. Cross argued that because he was incorrectly advised of the penalties prior to his plea, his plea was not knowing and intelligent. Id. The circuit court denied Cross' motion to withdraw his plea, but did vacate the sentence and ordered resentencing. Id., ¶ 12. Cross was again sentenced to the maximum for the crime of conviction, 20 years confinement and ten years extended supervision. Id.
¶ 154. We affirmed the denial of Cross' motion to withdraw his plea after concluding that the circuit court's statements on the range of punishments to which Cross was subjected by pleading was not "substantially higher[] than that authorized by law." Id., ¶ 30. We concluded that Cross had not made a prima facie case entitling him to shift the burden to the State to prove that his plea was knowing and intelligent. Id.
¶ 155. Dillard artfully attempts to place the burden on the State to show that his plea was knowing and intelligent. However, under a Bentley analysis, which is the analysis that is applicable here, the burden of proof never shifts to the State. Burton, 349 Wis. 2d 1, ¶ 7. Therefore, it is Dillard who must prove by clear and convincing evidence that manifest injustice will result unless his plea is vacated because he did not plead knowingly and intelligently. Bentley, 201 Wis. 2d at 311. Requiring the defendant to shoulder the burden of proof on whether his plea was knowing and intelligent is consistent with Bentley's and Strickland's directive that with regard to an ineffective assistance of counsel *595 claim, the defendant bears the burden to prove both deficient performance and prejudice. Id. at 312; Strickland, 466 U.S. at 687.
¶ 156. I conclude that our opinion in Denk controls Dillard's plea withdrawal motion because Denk is grounded in a charging error where there is no subsequent circuit court error. As in Denk, the circuit court here fully complied with its constitutional and statutory obligations during its plea colloquy with Dillard. That conclusion is affirmed by Dillard, who before us has never contended that the circuit court did not fully inform him of the potential punishments for armed robbery, the crime to which he pled; the constitutional rights he was relinquishing by his plea; or pointed to any error of any type in the plea colloquy.
¶ 157. After its thorough colloquy, the circuit court concluded that Dillard pled to armed robbery "freely, voluntarily, and intelligently." In order to overturn this conclusion, Dillard must prove by clear and convincing evidence that he did not "freely, voluntarily, and intelligently" plead. To do so he must provide factual-objective, not opinion-subjective, information that will prove by clear and convincing evidence that he did not knowingly and intelligently plead to armed robbery. Saunders, 196 Wis. 2d at 51.
¶ 158. At the hearing on Dillard's motion to withdraw his plea, Dillard said that he would have gone to trial on the charges of armed robbery and false imprisonment as a repeater if he had known that the State could not prosecute him as a persistent repeater on the armed robbery charge.[8] That is an "opinion-subjective" *596 statement, not a "factual-objective" statement.[9] Bentley, 201 Wis. 2d at 313 (concluding that a "defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions."); accord Sanders, 196 Wis. 2d at 51.
¶ 159. Dillard also said that he believed that the State had some problems with his identification and that bore on why he would have gone to trial. This is factual-objective information. However, his trial attorney testified that she advised him that their earlier concerns about the victim's identification of him were no longer strong after seeing the victim testify at two hearings. She said:
[H]e had to take into consideration that if he went to trial the jury would likely hear things that would be very devastating towards his case, like the fact that the victim had identified him on a sex offender database. I also reminded him that the victim had testified at a revocation hearing and that she testified in the proceedings rather credibly and that an administrative law judge had made a similar comment.
¶ 160. Therefore, before he pled, counsel explained to Dillard that T.L. had testified very credibly when she identified him as the perpetrator of the armed robbery at the revocation hearing. Accordingly, earlier concerns about the strength of her identification of him were not significant. Counsel also told Dillard that at trial the jury would hear that T.L. had identified him from his picture on the sex offender registry, a "devastating" fact to place before the jury.
*597 ¶ 161. Trial counsel was asked whether Dillard indicated to her why he agreed to the district attorney's offer, she said:
I believe it was the totality of the circumstances, the dismissal of Count 2, the dismissal of any repeater enhancer at all on Count 1, even just a simple repeater for having been convicted of prior felonies, the fact that the State had a motion filed that would introduce to the jury other acts that had very similar type of conduct that I believe would come in, which I told Mr. Dillard about, the fact again that we had seen the victim testify at a prelim [inary] and at a revocation hearing and she did not waiver in her identification of the defendant in the testimony. All of those thingsL]
Before he pled, Dillard knew that other acts evidence would be admitted at trial because of the similar types of victimization that led to his two prior armed robbery convictions. Dillard's trial attorney again explained that they had seen T.L. testify at two prior hearings and that T.L. was firm and convincing in her identification of Dillard as the perpetrator of the armed robbery.
¶ 162. The only factual-objective information Dillard provided in support of his motion to withdraw his plea was a concern about the strength of the victim's identification. At the hearing on Dillard's motion to withdraw his plea, trial counsel said that prior to his plea, she told Dillard that earlier concerns about the victim's identification of him were not significant after seeing T.L. testify at the preliminary hearing and the revocation hearing. There, T.L. was a credible witness who "did not waiver in her identification of [him]."
¶ 163. Trial counsel's testimony was sufficient to offset any benefit Dillard could receive from his sole, factual-objective statement that focused on the strength of T.L.'s identification of him as the perpetra *598 tor. The circuit court concluded that he did not meet his burden of proof by clear and convincing evidence. I agree with the circuit court and conclude that Dillard did not provide sufficient factual-objective information to meet his burden to prove by clear and convincing evidence that his plea to armed robbery was not knowing, intelligent and voluntary.
¶ 164. In addition, at the hearing on plea withdrawal, the circuit court assessed the credibility of Dillard's statement that if he had known that the State could not prosecute him as a persistent repeater, he would have gone to trial on the charges of armed robbery and false imprisonment as a repeater.[10] In making its assessment, the court asked:
Q. If I would have gave you the five years' initial confinement, would you have been satisfied with that sentence?
A. Of course.
Q. If I would have went along with what the State said, the eight years' initial confinement, would you have been satisfied with that?
A. Of course. That’s better than a life without parole.
Q. Your dissatisfaction with my sentence was the fact that I gave you the — the maximum, correct?
A. Um — I guess. Yes, I guess so.
*599 ¶ 165. Although not explicitly stated, the circuit court found that Dillard's assertion that he would have gone to trial but for the charging error was not credible. As the court explained:
[T]he only reason we're here on appeal is because I did not go along with [counsel or the district attorney's] recommendations and I gave him the maximum sentence which he knew he could have received from me. This is all a matter, in my opinion, from listening to him, now that he's got the sentence he doesn't like it and now he wants to appeal it and find a way to do so.
Credibility determinations are for the circuit court. We will not set them aside unless they are clearly erroneous. See State v. Carter, 2010 WI 40, ¶ 19, 324 Wis. 2d 640, 782 N.W.2d 695. The circuit court described why it did not believe Dillard; its credibility determination is not clearly erroneous.
¶ 166. The circuit court also concluded that Dillard did not prove that he was denied effective assistance of counsel because the mistaken belief of counsel was not prejudicial to Dillard. The court explained:
I believe that the other acts' evidence of the almost identical type crime taking place with a sexual assault and that evidence coming in on this case would have been devastating to any type of defense in this case, and that's, in my opinion, the reason why he reached this agreement because, as counsel indicates in her letter and here in testimony, there are a lot of negatives and she still would have recommended, even if the persistent repeater would automatically be dismissed, that she would have recommended [the plea that was offered] to him.
¶ 167. A defendant is prejudiced by ineffective assistance of counsel when factual-objective information submitted to the circuit court proves that "there is *600 a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Bentley, 201 Wis. 2d at 312-13 (citation omitted).
¶ 168. I agree with the circuit court: Dillard received the benefit of his bargain and suffered no prejudice.[11] Dillard's plea bargain was with the district attorney, not with the circuit court, who told Dillard that the court was not bound by any plea agreement. The district attorney fully performed, giving Dillard the benefit of his plea bargain. Furthermore, Dillard failed to prove that his plea was not knowing and intelligent because he did not provide sufficient factual-objective evidence to overcome other evidence presented at the plea withdrawal hearing. Stated otherwise, he did not prove by clear and convincing evidence that but for trial counsel's error, he would not have pled to armed robbery.
¶ 169. The prejudice analysis for Dillard's ineffective assistance claim is based on the same contention, i.e., that his plea was not knowing and intelligent. Therefore, the same analysis as I applied above, in which I concluded that Dillard failed to prove by clear and convincing evidence that his plea was not knowing and intelligent, controls the prejudice prong of his ineffective assistance claim. This is so because Dillard's ineffective assistance claim and his claim that his plea was not knowing and intelligent are based on the same lack of knowledge that the State could not prosecute him as a persistent repeater.
¶ 170. Therefore, Dillard failed to prove manifest injustice by clear and convincing evidence based on *601 prejudice that arises from deficient performance, just as he failed to prove that his plea was not knowing and intelligent. The arguments are, in this case, two sides of the same coin. Accordingly, I would reverse the court of appeals and affirm the decision of the circuit court.
III. CONCLUSION
¶ 171. Dillard was convicted of armed robbery based on his plea of no contest. He received the maximum permissible sentence for armed robbery. He moved to withdraw his plea, asserting that manifest injustice will result if his plea is not vacated. Dillard asserts his plea was not entered knowingly and intelligently because his counsel did not tell him that the State could not prosecute him as a persistent repeater for armed robbery. He claims ineffective assistance of counsel based on the same assertion.
¶ 172. In order to withdraw his plea subsequent to sentencing, Dillard bears the burden to prove manifest injustice by clear and convincing evidence. Bentley, 201 Wis. 2d at 311. Dillard failed to shoulder that burden because he submitted insufficient factual-objective information at the plea withdrawal hearing. Furthermore, the circuit court found that Dillard's testimony was not credible. Accordingly, I would reverse the court of appeals; affirm the circuit court; and I respectfully dissent from the majority opinion.
¶ 173. I am authorized to state that Justices DAVID T. PROSSER and ANNETTE KINGSLAND ZIEGLER join in this dissent.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 Dillard was not subject to a persistent repeater charge because both of his prior armed robbery convictions occurred on the same day. Wis. Stat. § 939.62(2m)(b)l.; State v. Long, 2009 WI 36, ¶¶ 35-36, 317 Wis. 2d 92, 765 N.W.2d 557.

 State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

 The court of appeals relied on State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64 (wherein the circuit court gave Cross mistaken information about the crime to which he pled); State v. Woods, 173 Wis. 2d 129, 496 N.W.2d 144 (Ct. App. 1992) (wherein the court erred by imposing a sentence to run consecutive to a juvenile disposition that Woods was then serving); State v. Brown, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d *586 543 (wherein the court erred by stating that Brown's plea did not trigger sex offender registration or Wis. Stat. ch. 980 commitment potential).

 Dillard argues for plea withdrawal because resentencing would have put him in the same position he was with his plea, facing a 40-year maximum imprisonment for armed robbery.

 Dillard could not meet this federal requirement because he admitted he committed the armed robbery of which he was convicted.

 The majority opinion erroneously states, "the [circuit] court.. . advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision." Majority op., ¶ 34. The circuit court never advised the defendant what would occur if he did not plead.

 Dillard said this same thing in a number of different ways, but each amounts to the same opinion-subjective narration about what he would have done if he had known the State could not prosecute him as a persistent repeater.

 The majority opinion repeatedly uses Dillard's assertion as though repeating it will change it from an insufficient opinion-subjective statement into requisite factual-objective proof, e.g., majority op., ¶¶ 44-47.

 The majority opinion attempts to characterize the circuit court's questioning of Dillard as irrelevant to the validity of Dillard's plea. "The defendant's subsequent satisfaction or dissatisfaction with his sentence has no bearing on whether his initial decision to enter a plea was knowing, intelligent, and voluntary." Majority op., ¶ 67. The majority opinion should consider why the circuit court would have asked such questions. Clearly, the circuit court was trying to assess the credibility of Dillard's representations to the court.

 The State conceded that trial counsel's performance was deficient, so I do not address whether Dillard met his burden of proof on that component of his ineffective assistance claim.