COURT OF APPEALS
DECISION
DATED AND FILED

May 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP343-CR**

Cir. Ct. No.  **2019CF158**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANTHONY RYAN HOLDEN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Trempealeau County:  THOMAS W. CLARK, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Anthony Ryan Holden appeals a judgment, entered upon his no-contest plea, convicting him of possession of methamphetamine, as a

party to the crime. Holden also appeals an order denying his postconviction motion for plea withdrawal. Holden contends that he should be permitted to withdraw his no-contest plea for two reasons: (1) his trial attorney was constitutionally ineffective by failing to file a suppression motion; and (2) due to defects in the plea colloquy, his plea was not knowing, intelligent, and voluntary. We reject these arguments and affirm.[1]

## BACKGROUND

¶2 On September 12, 2019, the State filed a criminal complaint charging Holden with possession with intent to deliver methamphetamine (more than ten grams but not more than fifty grams), a Class D felony, and possession of drug paraphernalia, a misdemeanor, both counts as a party to the crime. According to the complaint, on September 6, 2019, while working undercover, Investigator Eduardo Hernandez of the Trempealeau County Sheriff's Office arranged to purchase fourteen grams of methamphetamine from Morgan Kilty-Morgan (hereinafter, "Morgan") in exchange for $550. Morgan agreed to meet Hernandez in the parking lot of a motel in Osseo, Wisconsin, to make the exchange.

¶3 The complaint alleged that when Hernandez arrived at the motel parking lot, he saw Morgan "walking beside a maroon truck" and observed a male subject, later identified as Holden, in the vehicle's driver's seat. Hernandez then placed Morgan and Holden under arrest. During a search of Holden's person incident to his arrest, Hernandez found "a large wad of U.S. currency" and a bag

---

[1] Holden has not filed a reply brief in this appeal. By failing to file a reply brief, he has not refuted the State's arguments in support of the circuit court's denial of his postconviction motion. Unrefuted arguments may be deemed conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Nevertheless, we exercise our discretion to address the merits of Holden's appellate arguments.

weighing 18.3 grams, which contained a substance that field tested positive for methamphetamine. During a subsequent search of the truck, officers found three additional bags containing substances that field tested positive for methamphetamine, along with a glass pipe of the type commonly used for smoking methamphetamine.

¶4    The complaint alleged that following Holden's arrest, Holden waived his *Miranda*[2] rights and admitted that he had used methamphetamine several hours before traveling to Osseo. Holden also admitted that Morgan "asked if he wanted to make some money" and that he knew Morgan "was going to be selling stuff to people who owed her money." Morgan similarly admitted, after waiving her *Miranda* rights, that she went to Osseo to sell methamphetamine and that Holden agreed to transport her to Osseo for that purpose.

¶5    The State filed an Information containing the same charges as the complaint. Pursuant to a plea agreement, however, the State later filed an amended Information that changed Count 1 from possession with intent to deliver methamphetamine, as a party to the crime, to possession of methamphetamine, as a party to the crime. The amended Information described the amended Count 1 as "a Class I Felony." At Holden's plea hearing, the State explained that under the plea agreement, Holden would be entering a guilty or no-contest plea to the amended charge and, in exchange, the State would recommend that the possession of drug paraphernalia charge be dismissed and read in. The parties also agreed to jointly recommend that the circuit court withhold sentence and place Holden on probation for two years.

---

[2] *See* ***Miranda v. Arizona***, 384 U.S. 436 (1966).

3

¶6    During the plea hearing, the prosecutor and the circuit court repeatedly referenced the fact that the offense to which Holden was pleading was a felony. Following a plea colloquy, supplemented by a signed plea questionnaire and waiver of rights form, the court accepted Holden's no-contest plea to the amended charge of possession of methamphetamine, as a party to the crime, and found him guilty of that offense. The court then proceeded directly to sentencing. Consistent with the parties' joint recommendation, the court withheld sentence and imposed a two-year term of probation.

¶7    Holden subsequently filed a postconviction motion for plea withdrawal, arguing that his trial attorney was constitutionally ineffective "for failing to move the court to suppress evidence that resulted from Mr. Holden's unlawful arrest." Holden also argued that his plea was not knowing, intelligent, and voluntary due to multiple defects in the circuit court's plea colloquy. Specifically, Holden claimed that the court: (1) failed to ensure that he understood "the nature of the crime"—particularly, the nature of party to a crime liability; (2) failed to advise him that the court was not bound by the plea agreement; and (3) failed to ascertain whether any promises were made in connection with his anticipated plea, which, according to Holden, would have revealed that Holden mistakenly believed that he was pleading to a misdemeanor, rather than a felony.[3]

---

[3] Holden's postconviction motion also asserted that the plea colloquy was defective because the circuit court failed to advise him of the potential immigration consequences of his plea, as required by WIS. STAT. § 971.08(1)(c) (2021-22). The motion also asserted that "there was an invalid waiver of [Holden's] right to be present for [the] plea and sentencing hearing." Holden does not renew these arguments on appeal, and we therefore do not address them further. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (explaining that an issue raised in the circuit court, but not raised on appeal, is deemed abandoned).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶8    The circuit court held an evidentiary hearing on Holden's postconviction motion, during which Holden, Holden's trial attorney, and Hernandez testified. Following the witnesses' testimony, the court rejected Holden's ineffective assistance claim, concluding that a suppression motion challenging the legality of Holden's arrest would have been unsuccessful and that Holden's trial attorney "acted within professional norms" in not filing such a motion.

¶9    The circuit court also rejected Holden's claim that his plea was not knowing, intelligent, and voluntary due to defects in the plea colloquy. The court noted that it had "specifically informed" Holden of the elements of the offense before he entered his plea and had confirmed that Holden understood those elements. The court acknowledged that it had failed to inform Holden that it was not bound by the plea agreement; however, the court concluded that Holden was not entitled to relief on that basis because the court had followed the parties' joint sentence recommendation. Finally, the court rejected Holden's claim that he had "entered his no[-]contest plea under the impression that his plea would result in the felony charge being reduced to [a] misdemeanor." The court noted that both the State and the court had referred to the charge as a felony during the plea hearing. In addition, the court found incredible Holden's testimony "that he thought he was pleading to a misdemeanor and he told that to [his trial attorney.]"

¶10   The circuit court subsequently entered a written order denying Holden's postconviction motion, and Holden now appeals. Additional facts are included below where necessary.

**DISCUSSION**

¶11    To withdraw his or her plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow plea withdrawal would result in manifest injustice. *State v. Dillard*, 2014 WI 123, ¶36, 358 Wis. 2d 543, 859 N.W.2d 44. As relevant here, a defendant may demonstrate manifest injustice by showing that his or her trial attorney was constitutionally ineffective or by showing that the plea was not knowing, intelligent, and voluntary. *Id.*, ¶¶37, 84. Both of these inquiries present questions of constitutional fact. *Id.*, ¶¶38, 86. On appeal, we will uphold the circuit court's factual findings unless they are clearly erroneous, but the application of the facts to the applicable legal standards is a question of law that we review independently. *Id.*

**I. Ineffective assistance of trial counsel**

¶12    To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant fails to make a sufficient showing on one prong of this analysis, we need not address the other. *Id.* at 697.

¶13    Here, we need not address prejudice because, like the circuit court, we conclude Holden has not shown that his trial attorney performed deficiently by failing to file a suppression motion. It is well established that an attorney does not perform deficiently by failing to file a suppression motion that would have been properly denied. *See, e.g.*, *State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110. In this case, a suppression motion challenging the legality of Holden's arrest would have been properly denied, and, as a result, Holden's trial attorney did not perform deficiently by failing to file such a motion.

6

¶14 "A warrantless arrest is not lawful except when supported by probable cause." *State v. Lange*, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551. "Probable cause for arrest exists when the totality of the circumstances within the arresting officer's knowledge would lead a reasonable police officer to believe that the defendant probably committed a crime." *State v. Kutz*, 2003 WI App 205, ¶11, 267 Wis. 2d 531, 671 N.W.2d 660. The information known to the officer must be sufficient to lead a reasonable officer to believe that the defendant's involvement in a crime is more than a possibility, but it need not reach the level of proof beyond a reasonable doubt, nor must it show that guilt is more likely than not. *Id.* Instead, "[p]robable cause is a flexible, commonsense measure of the plausibility of particular conclusions about human behavior." *Id.* Furthermore, when an officer "is confronted with two reasonable competing inferences, one justifying arrest and the other not, the officer is entitled to rely on the reasonable inference justifying arrest." *Id.*, ¶12.

¶15 At the hearing on Holden's postconviction motion, Hernandez testified that on the date in question, he arranged to purchase fourteen grams of methamphetamine from Morgan. Morgan told Hernandez that "her guy" was with her, and she arranged to meet Hernandez in Osseo to complete their transaction. Based on his training and experience, Hernandez believed that when Morgan referred to "her guy," she meant her "drug connection."

¶16 Hernandez further testified that Morgan told him to meet her at a specific motel at a specific time and stated that she would be "inside a maroon-colored pickup truck." When Hernandez arrived at the specified location, he saw a maroon-colored pickup truck in the parking lot. He also saw Morgan—whom he identified based on a photograph that she had sent him—walking approximately five to ten feet from the truck. Hernandez then exited his squad car

and "tried to obtain [Morgan's] attention," but Morgan "immediately" turned away from him and began walking toward the truck. At that point, Hernandez arrested both Morgan and Holden, who was sitting in the truck's driver's seat.

¶17    The circuit court credited Hernandez's testimony regarding the circumstances leading up to Holden's arrest. Based on Hernandez's testimony, the court concluded that it was "reasonable for … Hernandez to assume" that Holden was "a participant … in bringing [Morgan] to the scene" and therefore "assist[ed] in the … attempted delivery of methamphetamine" to Hernandez. Consequently, the court concluded that Hernandez had probable cause to arrest Holden.

¶18    We agree with the circuit court's analysis. At the time of Holden's arrest, the facts summarized above would have led a reasonable police officer to believe that Holden had probably committed or was committing a crime—specifically, the attempted delivery of methamphetamine. *See Kutz*, 267 Wis. 2d 531, ¶11. Thus, any motion to suppress based on the alleged illegality of Holden's arrest would have been properly denied.[4] Consequently, Holden's trial attorney did not perform deficiently by failing to file a suppression motion. Because Holden failed to demonstrate that his trial attorney was constitutionally ineffective, the court correctly determined that Holden was not entitled to plea withdrawal on that basis.

---

[4] Furthermore, we note that a suppression motion challenging the searches of Holden's person and vehicle also would have failed. The warrantless search of Holden's person was constitutionally permissible as a search incident to a lawful arrest. *See State v. Denk*, 2008 WI 130, ¶40, 315 Wis. 2d 5, 758 N.W.2d 775. The officers could also permissibly search Holden's vehicle incident to his arrest because it was "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *See Arizona v. Gant*, 556 U.S. 332, 343 (2009).

## II. Knowing, intelligent, and voluntary plea

¶19 As noted above, Holden also contends that he is entitled to plea withdrawal because his plea was not knowing, intelligent, and voluntary due to three defects in the plea colloquy. A defendant who seeks plea withdrawal based on an alleged defect in the plea colloquy has the initial burden to satisfy a two-prong test. *State v. Pegeese*, 2019 WI 60, ¶26, 387 Wis. 2d 119, 928 N.W.2d 590. First, the defendant must make a prima facie showing that the circuit court violated WIS. STAT. § 971.08 or another court-mandated duty during the plea colloquy. *Pegeese*, 387 Wis. 2d 119, ¶26. Second, the defendant must allege that he or she did not, in fact, know or understand the information that should have been provided during the plea colloquy. *Id.*

¶20 If the defendant fails to satisfy his or her burden on either of these prongs, the circuit court must deny the defendant's motion for plea withdrawal. *Id.*, ¶27. If, however, the defendant satisfies both prongs, the court must hold an evidentiary hearing on the defendant's motion, during which the burden of proof shifts to the State to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary, despite any defects in the plea colloquy. *Id.* "The State may use 'any evidence' to prove that the defendant's plea was knowing, intelligent, and voluntary, including any documents in the record and testimony of the defendant or defendant's counsel." *State v. Taylor*, 2013 WI 34, ¶32, 347 Wis. 2d 30, 829 N.W.2d 482 (citation omitted).

¶21 As noted above, in his postconviction motion, Holden first asserted that the plea colloquy was defective because the circuit court failed to ensure that he understood "the nature of the crime." *See* WIS. STAT. § 971.08(1)(a). More

specifically, Holden contended that the court did not explain the concept of party to a crime liability.

¶22   The State concedes that under some circumstances, a circuit court has a duty to ensure during a plea colloquy that a defendant understands the meaning of party to a crime liability. *See State v. Howell*, 2007 WI 75, ¶55, 301 Wis. 2d 350, 734 N.W.2d 48. The State also concedes that the court "did not explore Holden's understanding of party to a crime liability" during Holden's plea colloquy. Nevertheless, the State contends that the court's failure in that regard "did not render the plea invalid under the facts of this case." We agree with the State's analysis for two reasons.

¶23   First, under the specific facts of this case, it was not necessary for the circuit court to ensure that Holden understood the concept of party to a crime liability. Under WIS. STAT. § 939.05, a person may be criminally liable as a party to a crime if he or she: "(a) Directly commits the crime; or (b) Intentionally aids and abets the commission of it; or (c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it." Sec. 939.05(2)(a)-(c). When a person is alleged to have directly committed a crime, and when the circuit court explains the elements of that crime during the plea colloquy, it is "not necessary … for the [circuit] court to additionally explain the concept of party to a crime liability." *State v. Brown*, 2012 WI App 139, ¶¶13-15, 345 Wis. 2d 333, 824 N.W.2d 916.

¶24   In this case, Holden was alleged to have directly committed the crime of possession of methamphetamine. That offense required the State to prove three elements: (1) that Holden possessed a substance; (2) that the substance was methamphetamine; and (3) that Holden knew or believed that the substance was

methamphetamine. *See* WIS JI—CRIMINAL 6030 (2024). According to the complaint, following Holden's arrest, law enforcement found a substance on Holden's person that field tested positive for methamphetamine.[5] At sentencing, Holden's attorney conceded that Holden "was found with meth on his person." Because Holden was alleged to have directly committed the crime of possession of methamphetamine, the circuit court did not need to explain party to a crime liability to Holden during the plea colloquy. *See **Brown***, 345 Wis. 2d 333, ¶¶13-15.

¶25 Second, even if the circuit court was required to explain party to a crime liability to Holden, the record shows that Holden failed to meet his burden on the second prong of the plea withdrawal analysis. Again, that prong requires a defendant to allege that he or she did not know or understand the information that should have been provided during the plea colloquy. ***Pegeese***, 387 Wis. 2d 119, ¶26. Holden's postconviction motion alleged that the court never explained the concept of party to a crime liability to him, but the motion did not allege that Holden did not understand that concept at the time that he entered his plea. A defendant's failure to allege actual unawareness of information that should have been provided during the plea colloquy is fatal to his or her postsentencing claim for plea withdrawal. *See **State v. Grant***, 230 Wis. 2d 90, 101-02, 601 N.W.2d 8 (Ct. App. 1999).

¶26 Holden's postconviction motion also asserted that the plea colloquy was defective because the circuit court failed to inform him that it was not bound by the plea agreement. The State concedes that the court was required—and failed—to provide this information during the plea colloquy. *See **State v. Hampton***,

---

[5] During the plea hearing, Holden's attorney stipulated that the circuit court could rely on the allegations in the complaint as the factual basis for Holden's no-contest plea.

2004 WI 107, ¶20, 274 Wis. 2d 379, 683 N.W.2d 14. Nevertheless, we agree with the State that this error was harmless because the court ultimately followed the parties' joint recommendation and imposed a two-year term of probation. *See **State v. Johnson***, 2012 WI App 21, ¶14, 339 Wis. 2d 421, 811 N.W.2d 441. Under these circumstances, Holden received "exactly what he bargained for" by entering into the plea agreement, and the court's failure to advise him that it was not bound by the plea agreement did not affect Holden's substantial rights. *See **id.*** As such, this deficiency in the plea colloquy does not give rise to a manifest injustice that would permit Holden to withdraw his no-contest plea.[6]

¶27 Finally, Holden's postconviction motion alleged that the plea colloquy was defective because the circuit court failed to ascertain whether any promises were made to him in connection with his anticipated plea. *See **State v. Bangert***, 131 Wis. 2d 246, 262, 389 N.W.2d 12 (1986). Holden alleged that this inquiry would have revealed that he was under the mistaken belief that he was pleading to a misdemeanor, rather than a felony. Following the postconviction hearing, the court rejected this claim, concluding the record showed that Holden understood that he was pleading to a felony.

¶28 Again, we agree with the circuit court's conclusion. The amended Information described the amended Count 1—i.e., possession of methamphetamine, as a party to the crime—as "a Class I Felony." In addition, when setting forth the terms of the plea agreement during the plea hearing, the prosecutor affirmatively

---

[6] In addition, we note that Holden again failed to meet his burden on the second prong of the plea withdrawal analysis with respect to his claim that the circuit court failed to inform him that it was not bound by the plea agreement. Although Holden's postconviction motion alleged that the court failed to provide that information during the plea colloquy, the motion did not allege that Holden was unaware of that information at the time he entered his plea. *See **State v. Pegeese***, 2019 WI 60, ¶26, 387 Wis. 2d 119, 928 N.W.2d 590; ***State v. Grant***, 230 Wis. 2d 90, 101-02, 601 N.W.2d 8 (Ct. App. 1999).

stated that the charge to which Holden would be pleading was "a Class I Felony." Thereafter, during the plea colloquy, the court asked Holden, "Do you understand that if you're convicted of *this felony* you may not vote in any election until your civil rights are restored?" (Emphasis added.) The court subsequently asked Holden, "Do you understand if you plead guilty to *this felony* it would be unlawful for you to possess a firearm?" (Emphasis added.) In both instances, Holden responded that he understood. At no point during the plea colloquy did Holden express any confusion about whether he was pleading to a misdemeanor or a felony.

¶29 At the postconviction hearing, Holden's trial attorney testified that during plea negotiations, he "likely" would have told Holden that it was possible the felony charge could be reduced to a misdemeanor. Counsel testified, however, that before Holden entered his plea, counsel would have "confirmed" that Holden understood that he was pleading to a felony. Counsel further testified that he "would have gone over the specific collateral consequences that come along with" being convicted of a felony. Counsel did not recall Holden expressing any confusion about the "felony/misdemeanor distinction in this case," nor did counsel recall Holden stating that he would only plead to a misdemeanor.

¶30 Holden testified at the postconviction hearing that based on his trial attorney's representations, he believed that he would be pleading to a misdemeanor. Holden also testified that he would not have accepted the plea deal if he had known that he would be pleading to a felony. On cross-examination, however, Holden conceded that his trial attorney never told him that the charge to which he would be pleading was a misdemeanor, rather than a felony. Instead, Holden made that "assumption" because the possibility of pleading to a misdemeanor had been "brought up" at some point. Nevertheless, Holden asserted that he told his trial attorney that he believed he was pleading to a misdemeanor.

¶31     The circuit court found incredible Holden's testimony "that he thought he was pleading to a misdemeanor and he told that to [his trial attorney.]" That credibility determination is amply supported by the record and is not clearly erroneous. *See State v. Domke*, 2011 WI 95, ¶58, 337 Wis. 2d 268, 805 N.W.2d 364 ("We will uphold the circuit court's credibility determination unless it is clearly erroneous."). Given the court's credibility determination and the other evidence summarized above, the State met its burden to prove by clear and convincing evidence that Holden understood that he was pleading to a felony, rather than a misdemeanor. *See Pegeese*, 387 Wis. 2d 119, ¶27. Accordingly, the court properly rejected Holden's claim for plea withdrawal based on that alleged misunderstanding.

        *By the Court.*—Judgment and order affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.